Mina WRIGHT, Plaintiff-Appellant,

v.

James YACKLEY, Defendant-Appellee.

No. 25710.

United States Court of Appeals,
Ninth Circuit.

April 20, 1972.

Edward Oksendahl (argued), of Denman, Reeves & Oksendahl, Idaho Falls, Idaho, for plaintiff-appellant.

W. F. Merrill (argued), of Merrill & Merrill, Pocatello, Idaho, for defendant-appellee.

Before MERRILL and ELY, Circuit Judges, and JAMESON, District Judge.*

MERRILL, Circuit Judge:

Appellant here appeals from dismissal of a medical malpractice action. She brought the action in the District Court for the District of Idaho and asserted jurisdiction on grounds of diversity of citizenship.

While a resident of South Dakota appellant had been treated by appellee, a South Dakota doctor, and at his direction was taking drugs acquired by prescriptions permitting unlimited refills. She moved from South Dakota to Idaho and, four months after appellee had last treated her, she sought to have the prescriptions refilled at an Idaho drugstore on the basis of copies of the prescriptions issued by a South Dakota drugstore. The druggist advised her that to continue to honor unlimited refill prescriptions he would require confirmation of the prescriptions from the doctor. Appellant then wrote appellee, and at her request (without charge) appellee furnished copies of the original prescriptions. This satisfied the druggist. Appellant alleges that eventually she was injured by use of the drugs.

The District Court dismissed the action for lack of jurisdiction over the person of the defendant-appellee. On appeal the question presented is whether Idaho's long-arm statute provided jurisdiction to sue the South Dakota doctor in an Idaho court. Idaho Code §§ 5–514 to 5–517.[1] If so, Rule 4(e) of the Federal Rules of Civil Procedure provides that he could be properly served in accordance with Idaho procedure so as to permit the Federal District Court in Idaho to entertain the suit despite service in South Dakota.[2] The principal issue raised by the attempted application of the Idaho statute is whether, assuming a tortious act was committed within the State of Idaho,[3] the asserted long-arm jurisdiction would be contrary to constitutional principles of due process.

If appellee was guilty of malpractice, it was through acts of diagnosis and prescription performed in South Dakota. The mailing of the prescriptions to Idaho did not constitute new prescription.

---

* Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

1. That portion of Idaho's long-arm statute which is relevant to our discussion on this appeal is Idaho Code § 5–514. It provides that: "Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation;

(b) The commission of a tortious act within this state;
* * * "

2. See Martens v. Winder, 341 F.2d 197, 199 (9th Cir.), cert. denied, 382 U.S. 937, 86 S.Ct. 391, 15 L.Ed.2d 349 (1965); Swanson Painting Co. v. Painters Local No. 260, 391 F.2d 523, 524 (9th Cir. 1968).

3. In Doggett v. Electronics Corp. of America, 93 Idaho 26, 28–29, 454 P.2d 63, 65–66 (1969), the Idaho Supreme Court construed the Idaho statutory provision extending jurisdiction over a person who commits a tortious act "within the state"—§ 5–514(b), quoted in note 1 supra—to include nonresidents whose actions taken outside Idaho result in injury to persons in Idaho. Pointing out that the Idaho act was based on the Illinois long-arm statute, the court followed the lead of Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). See also B.B.P. Ass'n, Inc. v. Cessna Aircraft Co., 91 Idaho 259, 264–265, 420 P.2d 134, 139–140 (1966).

It was not diagnosis and treatment by mail. It was simply confirmation of the old diagnosis and prescription and was recognized by the druggist as such. It did, of course, put the doctor on notice that consequences of his South Dakota services would be felt in Idaho and that it was by his very act of mailing that this would be made possible. In our view however, this does no more than put the doctor in the position of one who, in South Dakota, treats an Idaho resident with knowledge of her imminent return to Idaho and that his treatment thus may cause effects there.[4]

With reference to such a situation, § 37 of the Restatement (Second) of Conflict of Laws (1971) states the rule:

"A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable." [5]

The question is whether Idaho (assuming its acceptance of this general proposition) [6] may apply the rule in such a fashion as to confer jurisdiction upon its courts in such a case as this. In our judgment it could not; the exercise of jurisdiction in these circumstances would be unreasonable and in fact would work contrary to what we deem to be the dominant state interest.

In the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's (here the patient's) need. The need is personal and the services rendered are in response to the dimensions of that personal need. They are directed to no place but to the needy person herself. It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a

4. If the malpractice charge in this case were to be founded solely on the act of mailing copies of the earlier prescriptions to Idaho, we think exercise of long-arm jurisdiction would violate due process. The mailing was an isolated act, providing only minimal contact between the forum state and the nonresident doctor. *See* International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Its alleged consequences in Idaho were not intended by appellee. While those consequences may have been foreseeable, something more than foreseeability was required in this case where no benefit was to be derived by the doctor from his single, unsolicited connection with Idaho. *Compare* McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) ; Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969) ; Jones Enterprises, Inc. v. Atlas Service Corp., 442 F. 2d 1136 (9th Cir. 1971).

The balance of factors involved in a due process determination might be different if a doctor could be said to have treated an out-of-state patient by mail or to have provided a new prescription or diagnosis in such fashion. In that event, the forum state's interest in deterring such interstate medical service would surely be great. Here, however, the mailing of the copies was simply reflective of, and indeed a part of, the earlier treatment and prescription. *See* discussion in text *infra*.

5. Reasonableness is a convenient shorthand for the various factors that must be considered in a determination as to compliance with due process. *See* note 7 *infra*.

6. *See* Doggett v. Electronics Corp. of America, 93 Idaho 26, 30, 454 P.2d 63, 67 (1969), where the Idaho Supreme Court stated :
" §§ 5-514 through 5-517 are designed to provide a forum for Idaho residents. As such, the law is remedial legislation of the most fundamental nature. It, therefore, is to be liberally construed. * * * Under the circumstances *we believe that the legislature, in adopting I.C. §§ 5-514 through 5-517, intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution.*" (emphasis supplied)
*See also* B.B.P. Ass'n, Inc. v. Cessna Aircraft Co., 91 Idaho 259, 264, 420 P.2d 134, 139 (1966) ; Peterson, Jurisdiction of Idaho Courts Over Nonresidents, 36 Idaho State Bar Proceedings 58, 64 (1962).

portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it. The traveling public would be ill served were the treatment of local doctors confined to so much aspirin as would get the patient into the next state. The scope of medical treatment should be defined by the patient's needs, as diagnosed by the doctor, rather than by geography.

This focus on the provision of medical services in the location where they are needed leads to the conclusion that the exercise of *in personam* jurisdiction in this situation would be unreasonable in terms of certain of the factors that must be balanced to determine compliance with due process.[7] First, the amount of contact between defendant and forum state is determined by the chance occurrence of a resident of the forum state seeking treatment by the doctor while in the latter's state. From the very nature of the average doctor's localized practice, there is no systematic or continuing effort on the part of the doctor to provide services which are to be felt in the forum state. *Compare* International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Second, the nature of the contacts is normally grounded outside of any relationship with the forum state. Unlike a case involving voluntary, interstate economic activity, for example, which is directed at various states in order to benefit from effects sought in those states, *compare* McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L. Ed.2d 223 (1957); Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir.1969); Jones Enterprises, Inc. v. Atlas Service Corp., 442 F.2d 1136 (9th Cir.1971), here the residence of a recipient in the forum state is irrelevant and incidental to the benefits provided by the defendant in his location. *See* Tilley v. Keller Truck & Implement Corp., 200 Kan. 641, 649, 438 P.2d 128, 134 (1968); Developments in the Law—State-Court Jurisdiction, 73 Harv.L.Rev. 909, 929 (1960). Thus the defendant is not one who "purposefully avails itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Nor are medical services comparable to acts performed by a nonresident for the very purpose of having their consequences felt in the forum state. *See* Currie, The Growth of the Long Arm, 1963 Ill.L.Forum 533, 549; Reese & Galston, Doing an Act or Causing Consequences as Bases of Judicial Jurisdiction, 44 Iowa L.Rev. 249, 260–61 (1959).

Finally, the forum state's natural interest in the protection of its citizens is

7. *See* Aftanase v. Economy Baler Co., 343 F.2d 187, 197 (8th Cir. 1965) (Blackmun, J.); Hydraulics Unlimited Mfg. Co. v. B/J Mfg. Co., 323 F.Supp. 996, 998–999 (D.Colo.), aff'd, 449 F.2d 775 (10th Cir. 1971). That the due process test must be a flexible one that will consider the various circumstances of a particular case was made evident in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There the Supreme Court provided an inherently general formulation; it said due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play

and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158. Further, it stated that:

"[T]he criteria * * * cannot be simply mechanical or quantitative * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure."

*Id.* at 319, 66 S.Ct. at 159–160. *See also* L. D. Reeder Contractors v. Higgins Industries, Inc., 265 F.2d 768, 772 (9th Cir. 1959) ("The ultimate question, then, is *reasonableness.*")

here countered by an interest in their access to medical services whenever needed. In our opinion, a state's dominant interest on behalf of its citizens in such a case as this is not that they should be free from injury by out-of-state doctors, but rather that they should be able to secure adequate medical services to meet their needs wherever they may go. This state interest necessarily rejects the proposition that the sufficiency of out-of-state treatment is subject to in-state inquiry. Thus, state interest in general, another of the factors relevant to a due process inquiry, *see* McGee v. International Life Ins. Co., *supra,* 355 U.S. at 223, 78 S.Ct. 199, 2 L.Ed.2d 223; Aftanase v. Economy Baler Co., 343 F.2d 187, 197 (8th Cir.1965), does not, in combination with the character of the other factors, suffice to support jurisdiction.

■ We conclude that no tort was committed within the State of Idaho which would constitutionally confer jurisdiction under that state's long-arm statute. In terms of the constitutional translation offered by the Restatement, *supra,* the relationship between Idaho and appellee makes such jurisdiction unreasonable. Given the costs discussed above of extending Idaho's reach, mere foreseeability of the alleged effects oc-

curring in Idaho is insufficient in the over-all context of appellee's South Dakota activity.[8]

■ We find no merit in appellant's contention that appellee's gratuitous act of accommodation constituted the transaction of business within the State of Idaho such as to confer jurisdiction under Idaho Code § 5–514(a), *supra* at note 1.

■ Nor do we find merit in her contention that appellee voluntarily submitted to the jurisdiction of the Idaho District Court through general appearance. Rule 12 of the Federal Rules of Civil Procedure has abolished the formal distinction between general and special appearances.[9] What is required under Rule 12(g), (h) is that the defense of lack of jurisdiction over the person be raised by pre-answer motion or in the answer itself no later than the raising of other defenses under Rule 12.[10] This appellant did. He raised all his Rule 12 defenses in a single motion to dismiss.[11] Such a consolidation of defenses properly presented the particular defense of lack of *in personam* jurisdiction. *See* Hays v. United Fireworks Mfg. Co., 420 F.2d 836, 844 & 844 n.10 (9th Cir.1969).

Judgment affirmed.

8. *See generally* Jack O'Donnell Chevrolet, Inc. v. Shankles, 276 F.Supp. 998, 1004 (N.D.Ill.1967).

9. Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 874 (3d Cir.), cert. denied, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944); Martens v. Winder, 341 F.2d 197, 200 (9th Cir.), cert. denied, 382 U.S. 937, 86 S.Ct. 391, 15 L.Ed.2d 349 (1965); Davenport v. Ralph N. Peters & Co., 386 F.2d 199, 204 (4th Cir. 1967); *see* Dragor Shipping Corp. v. Union Tank Car Co., 378 F.2d 241, 243 n. 2 (9th Cir. 1967); 2A Moore's Federal Practice ¶ 12.12, at 2324–25 (2d ed. 1968); 5 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1344 (1969).

Despite appellant's suggestion that Idaho law is determinative, it has been recognized that the federal rules govern such

a clearly procedural matter as the making of defense appearances in response to a complaint. Neifeld v. Steinberg, 438 F.2d 423, 426 (3d Cir. 1971); C. Wright & A. Miller, *supra,* § 1343.

10. *See* Hays v. United Fireworks Mfg. Co., 420 F.2d 836, 844 (9th Cir. 1969); Guardian Title Co. v. Sulmeyer, 417 F.2d 1290 (9th Cir. 1969); 2A Moore's Federal Practice ¶¶ 12.01 [33], 12.07 [3] at 2264–65 (2d ed. 1968); C. Wright & A. Miller, *supra* note 9, §§ 1342, 1360, 1386.

11. In addition to lack of jurisdiction over the person, appellee's motion to dismiss asserted insufficiency of process, lack of jurisdiction over the subject-matter, failure to join an indispensable party, and failure to state a claim upon which relief could be granted.