Charles McGEE, Plaintiff,

v.

Dr. F. Tempel RIEKHOF, Defendant.

No. Cv–77–51–Bu.

United States District Court,
D. Montana,
Butte Division.

Jan. 18, 1978.

Thomas F. Joyce, of Burgess, Joyce, Prothero & Whelan, Butte, Mont., for plaintiff.

Robert A. Poore, of Poore, McKenzie, Roth, Robischon & Robinson, Butte, Mont., for defendant.

ORDER and MEMORANDUM

WILLIAM D. MURRAY, Senior District Judge.

Upon consideration of briefs submitted and oral argument in the above entitled cause regarding defendant's motion to dismiss,

IT IS ORDERED and this does order that defendant's motion to dismiss be and the same hereby is denied. The reasons for the denial are set forth more fully in the court's memorandum accompanying the order.

IT IS FURTHER ORDERED that defendant shall have 20 days from this date in which to file an answer to the complaint.

## FACTS

In June, 1974, plaintiff Charles McGee suffered a retinal detachment of his right eye. An eye specialist in Butte, Montana, referred him to defendant Riekhof, an ophthalmologist in Salt Lake City, Utah. Plaintiff was hospitalized in Salt Lake City and defendant performed surgery for repair of the retina. Plaintiff remained in the Salt Lake hospital until July 10, when he was discharged and returned to Butte. Defendant advised plaintiff to return to Salt Lake within two weeks for post-surgical treatment. During the interim, defendant requested plaintiff's wife to call and report on plaintiff's progress each week, which she did. During the second telephone conversation, defendant advised plaintiff's wife that plaintiff could return to work as a pipefitter foreman for the Anaconda Company. On his first day back at work, plaintiff suffered a retinal redetachment with a massive retinal tear of the right eye.

Plaintiff filed suit against defendant claiming defendant negligently advised plaintiff to return to work too soon after the operation, and that defendant failed to warn plaintiff of the dangers inherent in returning to work. Plaintiff does not claim that any of the treatment rendered in Utah was negligent; plaintiff's sole claim rests upon the telephone diagnosis rendered in Montana. Defendant has moved to dismiss the suit, alleging lack of personal jurisdiction in Montana. From the evidence it appears that defendant is not licensed to practice medicine in Montana, does not seek patients within Montana, and has no business interests whatsoever in Montana.

## ARGUMENT

The issue presented is whether Montana's long-arm statute provides plaintiff with jurisdiction to sue in Montana. The pertinent portion of that statute provides:

(A)ny person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:

\* \* \* \* \* \*

(b) the commission of any act which results in accrual within this state of a tort action;

\* \* \* \* \* \*

Rule 4B(1) Montana Rules of Civil Procedure.

*See, Scanlan v. Norma Projektil Fabrik*, 345 F.Supp. 292 (D.Mont.1972). If Montana state courts have jurisdiction, it is proper for a federal district court in Montana to entertain jurisdiction. Rule 4(e), Federal Rules of Civil Procedure; *Wright v. Yackley*, 459 F.2d 287, 288 (9th Cir. 1972). In this search for long-arm jurisdiction, there are essentially two inquiries which must be answered affirmatively: 1) was a tortious act committed in Montana; and 2) is it fundamentally fair to require defendant to defend this suit in Montana; in other words, does long-arm jurisdiction in this case comport with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The case at bar involves a relatively specialized set of circumstances in the case law developed under long-arm jurisdiction. When a defendant is not actually present in the forum state, there are two types of cases in which the defendant is still amenable to suit within the forum. Both types are characterized by what is known as "minimum contacts." In the first instance, defendant may have had repeated business contacts in the forum, such as appeared in *International Shoe, supra.* The second type of case involves an alleged wrong incurred by the plaintiff arising out of an isolated act done by defendant within the forum.

*McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) is such a case. The essence of this latter case-type involves a defendant who "purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The case at bar is unique in that it focuses upon a personal service rendered to plaintiff rather than the marketing of a product. A closer look must thus be taken at the case law which has developed around the relationship between the rendition of personal services and long-arm jurisdiction.

In *Aylstock v. Mayo Foundation*, 341 F.Supp. 560 (D.Mont.1972), plaintiffs were suing a Minnesota hospital for the drowning death of their daughter which occurred while she was hospitalized in defendant's facility. A doctor employed by defendant had examined plaintiff's daughter in Montana. Plaintiffs thus sought to predicate jurisdiction for the negligent act upon the doctor's examination, even though the doctor was not responsible for the negligent act which occurred in Minnesota. The court correctly determined that it would be unreasonable under the circumstances to require defendant to defend the tort action in Montana. In *McAndrew v. Burnett*, 374 F.Supp. 460 (M.D.Penn.1974), plaintiff's husband traveled to New York for surgery performed by defendant, wherein defendant negligently left a surgical device in the husband's body. The husband returned home to Pennsylvania where he died. The Pennsylvania District Court concluded the tortious action' occurred in New York and declined jurisdiction. Similarly, in *Gelineau v. New York University Hospital*, 375 F.Supp. 661 (D.N.J.1974) the medical services complained of were performed in New York, not New Jersey, rendering assumption of jurisdiction in New Jersey incompa-

tible with due process. In each of these cases the plaintiffs had traveled out of the forum state to seek medical services elsewhere. While they were outside the forum, alleged negligent acts occurred, and upon returning to the forum, they suffered injury. In each case the basis for the proximate cause of the injuries occurred outside the forum. It is to these cases that the "portable tort" language of *Wright, supra*, is most apropos.[1] The case at bar is singularly distinguishable because the alleged negligent act—advising plaintiff to return to work prematurely—occurred in Montana. This is not a case of defendant treating plaintiff in Utah and then having the effects of the treatment felt only after plaintiff returned to Montana. Plaintiff McGee was in Montana when the diagnosis was rendered. If plaintiff's complaint was based upon negligent performance of the eye operation, this court would be compelled to follow the rationale of *Aylstock, McAndrew* and *Gelineau*; but such is not the case.

The distinction between the case at bar and the other personal service cases is illustrated most poignantly by reference to *Wright, supra*. In that case, plaintiff, while a resident of South Dakota, was treated by defendant and given a prescription for unlimited refills. Plaintiff thereafter moved to Idaho and wrote defendant, requesting a copy of the prescription. Defendant obliged, and without altering the original prescription, sent plaintiff a copy. Plaintiff thereafter incurred injury allegedly from use of the drugs erroneously prescribed. The Ninth Circuit upheld the Idaho District Court's dismissal of the suit for lack of personal jurisdiction over the defendant. In making this determination, the Ninth Circuit said:

> If appellee was guilty of malpractice, it was through acts of diagnosis and pre-

---

1. In the case of personal services focus must be on the place where the services are rendered, since this is the place of the . . . patient's need. * * * It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tor-

tious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. *Wright, supra*, 459 F.2d at 289–90.

scription performed in South Dakota. The mailing of the prescriptions to Idaho did not constitute new prescription. It was not diagnosis and treatment by mail. It was simply confirmation of the old diagnosis and prescription and was recognized by the druggist as such. *Wright, supra,* 459 F.2d at 288–289.

The case before this court involves diagnosis rendered telephonically in Montana. The advice that plaintiff could ·return to work clearly constituted new diagnosis, as distinguished from the prescription in *Wright.* Moreover, the Ninth Circuit took note of this distinction:

> The balance of factors involved in a due process determination might be different if a doctor could be said to have treated an out-of-state patient by mail or to have provided a new prescription or diagnosis in such fashion. In that event, the forum state's interest in deterring such interstate medical service would surely be great. Here, however, the mailing of the copies was simply reflective of, and indeed a part of, the earlier treatment and prescription. *Wright, supra,* 459 F.2d at 289, n.4.

In the instant case, the defendant doctor did precisely what wasn't done in *Wright:* he provided a new diagnosis via telephone.[2] This court recognizes the need to keep open the flow of medical and other personal services across state boundaries. It certainly is not this court's desire to deter interstate medical services, as suggested in the footnote in *Wright;* such services are too beneficial to residents of states like Montana who do not have intrastate access to the more progressive and accomplished medical centers. However, the desire to maintain access to interstate medical services must be balanced with the need to maintain the quality of care. Most assuredly, preservation of interstate medical services will not be achieved by insulating doctors from malpractice claims.

Based upon the fact the medical service in this case amounts to a new diagnosis, and was rendered to plaintiff while he was in Montana, this court concludes that exercise of *in personam* jurisdiction in this situation is not unreasonable, and comports with the tenets of due process. Indeed, it would be fundamentally unfair to patients to permit doctors to telephonically render services and treatment in Montana, yet shield them from suit in Montana. This conclusion is fully compatible with the Ninth Circuit's adoption of the "three rules" which can be drawn from a combined reading of *International Shoe, McGee* and *Hanson:* an act within the forum, the cause of action arising from that act, and the reasonableness of subjecting the defendant to jurisdiction within the forum.[3] The motion to dismiss is denied.

**2.** The isolated act upon which jurisdiction can rest does not require defendant's physical presence within the forum. The Ninth Circuit has recognized that this act can be by mail only. *Wright, supra,* 459 F.2d at 289, n. 4. *See also,* footnote 3 herein. There is no difference for the purposes of this inquiry between interstate diagnosis by mail and by telephone. Defendant concedes as much in his Memorandum In Support of Motion to Dismiss Complaint, p. 6.

**3.** In more detail, the three rules are:

"(1) The nonresident defendant must do *some act or consummate some transaction* within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if its effects within the state are substantial enough to qualify under Rule Three.

"(2) The cause of action must be one which arises out of, or results from, the activ-

ities of the defendant within the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be a 'substantial minimum contact.'

"(3) Having established by *Rules One and Two* a *minimum contact between* the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of 'fair play' and 'substantial justice.' If this test is fulfilled, there exists a 'substantial minimum contact' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens."

*Aanestad v. Beech Aircraft Corp.,* 521 F.2d 1298, 1300 (9th Cir.), *cert. den.,* 419 U.S. 998, 95 S.Ct. 313, 42 L.Ed.2d 272 (1974), quoting *L.*

*D. Reeder Contractors v. Higgins Industries,* 265 F.2d 768, 773–74 n. 12 (9th Cir. 1959), in turn quoting 47 Georgetown L.J. 342, 351–52 (1958).