Isaiah CLARK, Appellant,

v.

Frank NOYES, M.D., Appellee.

No. 05–93–00196–CV.

Court of Appeals of Texas, Dallas.

Jan. 13, 1994.

James D. Blume and Jennifer Stoddard, Dallas, for appellant.

Scott W. MacLaren, Dallas, for appellee.

Before THOMAS, OVARD, and BARBER, JJ.

## OPINION

BARBER, Justice.

Isaiah Clark, a Texas resident, filed a medical malpractice suit in the 101st District Court in Dallas County, Texas, against Frank Noyes, M.D., an Ohio resident. Dr. Noyes filed a special appearance to present a motion objecting to jurisdiction by the Texas court. Following a hearing, the trial court sustained Dr. Noyes's motion and dismissed

**511**

the cause for want of personal jurisdiction. Clark appeals asserting one point of error: that the trial court erred in sustaining Dr. Noyes's objection to personal jurisdiction. We affirm the trial court's order.

## FACTUAL AND PROCEDURAL HISTORY

In plaintiff's original petition, Clark alleges that he injured his knee in 1983. Due to continued significant disability, Clark consulted Dr. Noyes for an orthopedic examination at the Cincinnati Sportsmedicine Center in Cincinnati, Ohio, on July 11, 1984. Dr. Noyes performed an arthroscopic evaluation and recommended reconstructive knee surgery. Dr. Noyes performed a second arthroscopic evaluation on July 19, 1984, and again recommended surgery. On July 29, 1984, Dr. Noyes performed surgery to reconstruct Clark's knee. Clark was discharged on September 4, 1984. In September 1992, Clark filed a medical malpractice action against Dr. Noyes alleging that Dr. Noyes was negligent in performing the surgery.

Dr. Noyes filed a special appearance objecting to personal jurisdiction. A deposition was submitted as evidence at the hearing on the special appearance. In the deposition, Dr. Noyes testified that he was licensed in Michigan, Ohio, and Kentucky, and had hospital privileges in Ohio and Kentucky. Dr. Noyes was not licensed in Texas. Dr. Noyes was employed by the Cincinnati Sportsmedicine Center. He provided treatment to all of his patients in Cincinnati. Dr. Noyes treated Clark in 1984. At the time he was treated, Clark represented that he was a Kentucky resident. Clark received all of his treatment in Cincinnati. Dr. Noyes never provided treatment to Clark, or to any other patient, in Texas.

## BURDEN OF PROOF AND STANDARD OF REVIEW

During oral argument, counsel for Clark asserted that Clark was required only to make a prima facie showing of personal jurisdiction and that we should take Clark's pleadings as true and resolve all conflicts in the evidence in favor of a prima facie showing of personal jurisdiction. In making the

argument, counsel relied on *Bullion v. Gillespie*, 895 F.2d 213 (5th Cir.1990). However, *Bullion* addressed the procedure for determining personal jurisdiction in federal court. In federal court, when jurisdictional facts are disputed, the party seeking to invoke the jurisdiction of the court has the burden of showing sufficient minimum contacts. *Id.* at 216–17. The Fifth Circuit stated that when the jurisdictional issue was being decided on the basis of affidavits, only a prima facie case of personal jurisdiction need be shown. *Id.* at 217. In making such a determination, the court is to take the uncontroverted allegations as true and resolve conflicts in favor of the plaintiff in determining whether a prima facie showing of personal jurisdiction is made. *Id.*

▆ Although we use the federal due process standard in analyzing minimum contacts, *see, e.g., Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990), we do not use federal procedural rules in determining how such proof must be made. If we were to adopt this standard of review, we would be incorrectly placing the burden on the plaintiff. In Texas, the defendant has the burden of proving lack of jurisdiction and must negate every possible ground of personal jurisdiction. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985). In determining whether the trial court erred in sustaining Dr. Noyes's objection to personal jurisdiction, we examine the entire record. *See Bellair, Inc. v. Aviall of Texas, Inc.*, 819 S.W.2d 895, 898 (Tex.App.—Dallas 1991, writ denied). We review the evidence in the light most favorable to the trial court's ruling. *See Project Eng'g USA Corp. v. Gator Hawk, Inc.*, 833 S.W.2d 716, 722 (Tex.App.—Houston [1st Dist.] 1992, no writ).

▆ The trial court did not make findings of fact or conclusions of law in connection with its ruling on the special appearance, nor did the parties request findings or conclusions. "Under these circumstances, the trial court's judgment implies all necessary fact findings in support of the judgment." *Temperature Systems, Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 672 (Tex.App.—Dallas 1993, writ dism'd by agr.). We affirm the trial court's judgment if it can be upheld on any

legal theory that is supported by the evidence. *Id.*

## JURISDICTIONAL REQUIREMENTS

■ Texas courts may exercise personal jurisdiction over non-resident defendants if two conditions are met. *Schlobohm*, 784 S.W.2d at 356. "First, the Texas long-arm statute must authorize the exercise of jurisdiction." *Id.* Second, the exercise of jurisdiction must comport with "federal and state constitutional guarantees of due process." *Id.*

### A. Texas Long–Arm Statute

The Texas long-arm statute authorizes Texas courts to exercise personal jurisdiction over non-resident defendants "doing business" in the state. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 17.042 (Vernon 1986). Section 17.042 lists specific acts which constitute doing business in Texas. *Id.* The statute also provides that "other acts" may constitute doing business in Texas for purposes of the long-arm statute. *Id.* "[T]he broad language of the long-arm statute's doing business requirement allows the statute to reach as far as the federal constitution permits." *Schlobohm*, 784 S.W.2d at 357; *Temperature Systems, Inc.*, 854 S.W.2d at 674. We, therefore, consider whether the exercise of personal jurisdiction over Dr. Noyes would violate federal constitutional due process requirements. *See Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991).

### B. Federal Due Process

■ "Federal constitutional requirements of due process limit the power of the state to assert personal jurisdiction over non-resident defendants...." *Id.* at 226. Two requirements must be met for the exercise of personal jurisdiction over non-residents to comport with federal due process. *See id.* at 230–31; *Temperature Systems, Inc.*, 854 S.W.2d at 674. First, the non-resident defendant must have purposely established minimum contacts with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985); *Guardian Royal*, 815

S.W.2d at 226. "There must be a 'substantial connection' between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas." *Guardian Royal*, 815 S.W.2d at 230. Second, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Id.* at 231; *see also Burger King Corp.*, 471 U.S. at 476, 105 S.Ct. at 2183–84.

## MINIMUM CONTACTS

■ The constitutional touchstone in determining whether the exercise of personal jurisdiction over a non-resident comports with due process is whether the non-resident defendant purposefully established "minimum contacts" in the forum state. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 108, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987); *Guardian Royal*, 815 S.W.2d at 226–27. Minimum contacts must be based on "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). The unilateral activity of those claiming a relationship with the non-resident defendant cannot satisfy the minimum contacts requirement. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980) (quoting *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1240). The purposeful availment requirement ensures that a non-resident defendant is not haled into the courts of a jurisdiction as the result of "random," "fortuitous," or "attenuated" contacts. *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)).

■ Texas courts may exercise two types of jurisdiction based on a non-resident's contacts with the state. If the controversy arises out of the defendant's contacts with Texas, the court may invoke specific jurisdiction over the non-resident defendant. *See Helicopteros Nacionales de Colombia, S.A. v.*

*Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Guardian Royal,* 815 S.W.2d at 227. If the cause of action does not arise out of the contacts, Texas courts may exercise personal jurisdiction over a non-resident defendant who maintains continuous and systematic contacts with the state. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872; *Guardian Royal,* 815 S.W.2d at 228.

## A. Specific Jurisdiction

 Clark first argues that Texas courts have specific jurisdiction over Dr. Noyes.[1] Clark specifically alleges that Dr. Noyes purposefully directed his medical services to Texas residents. In addition to himself, Clark alleges that Dr. Noyes treated a Houston Oilers football player and a Cincinnati Rockers professional indoor football player, both of whom he alleges were Texas residents. In footnote two of his brief, Clark asserts that Dr. Noyes's referral of Texas patients to Texas physicians and his acceptance of referrals from Texas physicians establishes sufficient contacts to allow Texas courts to exercise specific jurisdiction over Dr. Noyes. This is an incorrect statement of specific jurisdiction. Specific jurisdiction may be asserted if the controversy arises out of the non-resident defendant's contacts with the forum state. *Guardian Royal,* 815 S.W.2d at 230. "[T]he minimum contacts analysis focuses on the relationship among the defendant, the forum and the litigation."

*Id.* at 228. Thus, in determining whether there was specific jurisdiction over Dr. Noyes, we look only to Dr. Noyes's relationship with Clark and Texas; any other contacts Dr. Noyes allegedly established with the state are evaluated only in terms of whether they give rise to general jurisdiction.

The evidence upon which the trial court made its determination that Texas lacked personal jurisdiction over Dr. Noyes was derived from his deposition. In the deposition, Dr. Noyes testified that he did not remember who referred Clark to the Cincinnati Sportsmedicine Center. He further testified that all of the consultations, examinations, and treatments, including the surgery, took place in Cincinnati, Ohio. Dr. Noyes said he did not know Clark was a resident of Texas. Rather, Clark represented that he was a resident of Kentucky at the time he received the treatment. Dr. Noyes never provided treatment to Clark in Texas.

Dr. S. Munns worked as a fellow to Dr. Noyes. Dr. Munns prepared and signed Clark's discharge summary for Dr. Noyes. It was Dr. Munns's responsibility to provide the information in the summary. The summary indicated that Clark was to continue in physical therapy as described by Robert Mangine. Dr. Noyes had no knowledge as to the accuracy of the information. Further, Dr. Noyes testified that Robert Mangine was the head of physical therapy at the clinic in 1984. Dr. Noyes did not know whether Man-

---

1. Clark specifically alleges fifteen contacts by Dr. Noyes with Texas which give rise to either specific or general jurisdiction:

 (1) Dr. Noyes has treated and currently treats Texas residents.

 (2) Dr. Noyes treated at least eleven Texas residents over a period of ten years.

 (3) Dr. Noyes treats patients from 48 states.

 (4) Dr. Noyes routinely treats Texas resident professional athletes and treats professional athletes from other states across the country.

 (5) Dr. Noyes prescribes, directs, and monitors therapy to non-resident outpatients, including Texas residents, once they leave the Cincinnati clinic and return home. Dr. Noyes also prescribes medication to Texas residents as well as to most of his residents from foreign states.

 (6) Dr. Noyes locates Texas physical therapists and refers patients to them for treatment.

 (7) Texas physicians refer patients to Dr. Noyes for treatment.

 (8) Dr. Noyes has substantial business interests in Texas through participation in and profit from three medical products: the Cincinnati Knee Brace, the 3M Arthroscopic Pump, and Biodex exercise equipment.

 (9) Dr. Noyes contributes to and authors medical publications that are distributed throughout Texas.

 (10) Dr. Noyes produces educational videotapes that are available for purchase by Texas institutions, professionals, and individuals.

 (11) Dr. Noyes attends medical conferences in Texas.

 (12) Dr. Noyes has lectured at at least one Texas medical conference.

 (13) Dr. Noyes served as an examiner for the American Board of Orthopedic Examiners.

 (14) Dr. Noyes attended United States Air Force officer training school in San Antonio, Texas.

 (15) Dr. Noyes was born in El Paso, Texas.

gine was going to monitor or direct Clark's physical therapy after his discharge.

We have been unable to find any direct Texas case law concerning the exercise of personal jurisdiction over a non-resident physician where the treatment was provided to the plaintiff in the physician's home state. However, other states and federal courts interpreting state law have addressed the issue.[2] We will, therefore, look to those cases for guidance in analyzing the issue before us.

*Wright v. Yackley*, 459 F.2d 287 (9th Cir. 1972), is the seminal case dealing with the exercise of personal jurisdiction over a non-resident defendant physician. Wright, an Idaho resident, brought suit against a doctor, a South Dakota resident, in federal district court in Idaho for injuries allegedly received from medication prescribed by the doctor. The doctor prescribed the medication in South Dakota while Wright was a resident of South Dakota. Wright subsequently moved to Idaho, where she continued to have the prescription filled. The doctor's contact with Idaho involved his sending copies of the original prescription to Wright so that the Idaho pharmacist would continue to prescribe the medication. The district court dismissed the action for want of jurisdiction over the doctor. *Id.* at 288.

The Ninth Circuit affirmed the district court's judgment. *Id.* at 291. In reaching its decision, the court noted that all of the acts of which Wright complained occurred in South Dakota. *Id.* at 288–89. By mailing copies of the existing prescription to Idaho, the doctor did not diagnose or treat Wright. *Id.* The Ninth Circuit stated that in cases involving personal services, the focus should be on where the services were rendered. *Id.* at 289. The very nature of medical services

is such that their consequences would be felt where the patient went. *Id.* However, the court stated that the tortious rendition of such services was not a portable tort which could be deemed to have been committed wherever the consequences were foreseeably felt. *See id.* at 289–90.

> Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it. The traveling public would be ill served were the treatment of local doctors confined to so much aspirin as would get the patient into the next state. The scope of medical treatment should be defined by the patient's needs, as diagnosed by the doctor, rather than by geography.

*Id.* at 290.

The court concluded that personal jurisdiction over the doctor would be unreasonable. *Id.* at 289. The contact between the doctor and the forum state was based on the appellant's seeking treatment from the doctor while in the doctor's home state. The nature of the average doctor's localized practice showed no systematic and continuous effort to provide services which were to be felt in foreign states. The residence of the patient was irrelevant and incidental to the treatment provided by the doctor in his home state. The doctor did not purposefully avail himself of the privilege of conducting activities in the forum state. The forum state's interest in protecting its citizens had to be balanced with its interest in their access to medical services whenever needed. *See id.* at 290–91.

*Gelineau v. New York University Hospital*, 375 F.Supp. 661 (D.N.J.1974), addressed

**2.** Cases in which the courts found insufficient minimum contacts to establish personal jurisdiction over a non-resident doctor or hospital include: *Wolf v. Richmond County Hospital Authority*, 745 F.2d 904 (4th Cir.1984), *cert. denied*, 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985); *Lemke v. St. Margaret Hospital*, 552 F.Supp. 833 (N.D.Ill.1982), *modified upon reconsideration*, 594 F.Supp. 25 (N.D.Ill.1983); *Walters v. St. Elizabeth Hospital Medical Center*, 543 F.Supp. 559 (W.D.Pa.1982); *Aylstock v. Mayo Foundation*, 341 F.Supp. 560 (D.Mont.1972); *Valley*

*Wide Health Services, Inc. v. Graham*, 106 N.M. 71, 738 P.2d 1316 (1987); *Etra v. Matta*, 61 N.Y.2d 455, 474 N.Y.S.2d 687, 463 N.E.2d 3 (1984). Cases in which the courts found sufficient minimum contacts to establish personal jurisdiction over a non-resident doctor or hospital include: *Bullion v. Gillespie*, 895 F.2d 213 (5th Cir.1990); *Kennedy v. Freeman*, 919 F.2d 126 (10th Cir.1990); *Cubbage v. Merchent*, 744 F.2d 665 (9th Cir.1984), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985); and *McGee v. Riekhof*, 442 F.Supp. 1276 (D.Mont.1978).

the issue of a New York hospital's amenability to personal jurisdiction in federal district court in New Jersey. Gelineau, a New Jersey resident, received a blood transfusion at the defendant hospital. He was subsequently diagnosed with infectious hepatitis and brought suit in federal district court in New Jersey. *Id.* at 663. The district court held that New Jersey lacked personal jurisdiction over the defendant hospital. *Id.* at 669.

The *Gelineau* court distinguished cases involving personal services rendered in the hospital's home state after the plaintiff voluntarily traveled to the foreign state to benefit from the service from those cases in which the non-resident defendant deliberately or foreseeably shipped a product into the forum state's markets. *See id.* at 667. The court stated:

> [W]hen a ... patient travels to receive professional services without having been solicited, ... then the [patient] ... ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.
>
> Any other rule would seem to be not only fundamentally unfair, but would inflict upon the professions the obligation of traveling to defend suits brought in foreign jurisdictions, sometimes very distant jurisdictions, there brought solely because the patient ... upon his return home decided to sue for services sought by himself abroad.
>
> Such a rule would have a chilling effect on the availability of professional services to non-residents.

*Id.*

We find the reasoning of these two cases persuasive. Dr. Noyes treated Clark in Cincinnati. There is no evidence that Dr. Noyes prescribed any medication, directed and monitored Clark's physical therapy, or had any contact with Clark after Clark returned to Texas. The alleged medical malpractice occurred in Cincinnati. This was not a portable tort that Clark could take with him wherever he chose to go. *See Wright,* 459 F.2d at 290. Clark traveled to Cincinnati to receive the treatment and he should expect to travel again to complain of any alleged

improperly rendered treatment. *See Gelineau,* 375 F.Supp. at 667.

Clark cites *Bullion* and *Kennedy v. Freeman,* 919 F.2d 126 (10th Cir.1990), as persuasive authority to support his contention that Dr. Noyes's treatment of Clark in Cincinnati was sufficient to establish minimum contacts for purposes of specific jurisdiction. In *Bullion,* the Fifth Circuit determined that the evidence established a prima facie showing of personal jurisdiction in Texas over a non-resident doctor. *Bullion,* 895 F.2d at 217. The non-resident defendant doctor was contacted by Bullion's Texas doctor and the two established a professional relationship. Additionally, the doctor invited Bullion to participate in an experimental treatment program administered by the doctor and approved by the Food and Drug Administration. The doctor mailed the medication that Bullion alleges damaged her liver from California to Texas on three occasions. Bullion's Texas doctor monitored her progress and reported his findings to the doctor. *Id.* at 214–15.

In *Kennedy,* the Tenth Circuit determined that a Texas doctor's activities were sufficient to establish minimum contacts in Oklahoma. *Kennedy,* 919 F.2d at 129. The defendant doctor, a Texas resident, willingly accepted Kennedy's medical sample from Oklahoma. The doctor signed the diagnosis and rendered it to Kennedy through the mail. The doctor knew of the extreme significance of the diagnosis and that it would be the basis of Kennedy's future treatment. The doctor also billed Kennedy in Oklahoma. *Id.*

None of these factors is present in Clark's case. Clark received all of his treatment in Cincinnati. At the time he received his treatment, Clark represented that he was a resident of Kentucky. The record contains no evidence that Dr. Noyes either prescribed medication for Clark or sent it through the mail. There is no evidence in the record that Dr. Noyes had any type of relationship with any Texas physician regarding Clark's treatment. Dr. Noyes testified that he did not provide any treatment to Clark in Texas. Additionally, Dr. Noyes did not know wheth-

er the physical therapist monitored or directed Clark's physical therapy in Texas from Cincinnati.[3]

■ Texas has a legitimate interest in providing a convenient and effective forum for its residents. *See Lemke v. St. Margaret Hospital,* 552 F.Supp. 833, 837 (N.D.Ill.1982), *modified upon reconsideration,* 594 F.Supp. 25 (N.D.Ill.1983). "[E]asy access to the courts may serve to deter shoddy medical treatment and maintain the quality of care rendered to [Texas] residents." *Id.* However, these concerns are outweighed by the need for Texas residents to have access to the best available medical care regardless of state lines. *See id.* To assert personal jurisdiction over a non-resident physician who treated his patient in the physician's home state, directed no activity toward Texas, and did not purposefully avail himself of the privileges and protections of practicing medicine in Texas, could potentially have a chilling effect on the willingness of out-of-state doctors to treat Texas patients. *See id.* We conclude that Dr. Noyes lacked sufficient minimum contacts with Texas to justify the assertion of specific jurisdiction.

### B. General Jurisdiction

■ Clark also asserts that Dr. Noyes has sufficient minimum contacts with Texas such that general jurisdiction may be asserted. Texas courts may assert general jurisdiction over a non-resident defendant when the cause of action does not arise out of the contacts, but the non-resident defendant maintains continuous and systematic contacts with the state. *See Helicopteros,* 466 U.S. at

3. However, even if the physical therapist had maintained such contact with Clark, that would not be sufficient under the evidence to establish personal jurisdiction over Dr. Noyes. *See Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. at 2183–84; *Siskind v. The Villa Foundation for Education, Inc.,* 642 S.W.2d 434, 437 (Tex.1982).

4. Clark also cites *Rossman v. State Farm Mut. Auto Ins. Co.,* 832 F.2d 282 (4th Cir.), *Eli Lilly & Co. v. Home Ins. Co.,* 794 F.2d 710 (D.C.Cir. 1986), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990, 991 (1987), *Design Info. Sys. v. Feith Sys. & Software, Inc.,* 801 S.W.2d 569 (Tex. App.—Fort Worth 1990), *rev'd in part on other grounds,* 813 S.W.2d 481 (Tex.1991), and *General Elec. Co. v. Brown & Ross Int'l Distrib., Inc.,* 804

414, 104 S.Ct. at 1872; *Guardian Royal,* 815 S.W.2d at 228. An assertion of general jurisdiction requires a more demanding analysis of minimum contacts and requires a showing of "substantial activities" by the non-resident defendant in Texas. *Guardian Royal,* 815 S.W.2d at 228.

### 1. Medical Treatment of Patients from States Other than Texas

■ Clark claims that Dr. Noyes treats patients from 48 states. He also claims that Dr. Noyes directs, prescribes, and monitors physical therapy, and prescribes medication to patients in other states. Clark cites *Guardian Royal*[4] as support for his proposition that this treatment of patients from other states made it foreseeable that he would be subject to the jurisdiction of Texas courts. Clark's reliance on *Guardian Royal* for this argument is misplaced.

*Guardian Royal* dealt with the issue of whether a foreign insurance company was subject to the jurisdiction of Texas courts. *Id.* 815 S.W.2d at 225. The Texas Supreme Court stated that foreseeability was especially pertinent to determining whether a non-resident insurance company established minimum contacts with the forum state and identified two factors to be considered, when appropriate, in determining jurisdiction over a non-resident insurance company. *Id.* at 227. First, the court should consider "the insurer's awareness that it was responsible to cover losses arising from a substantial subject of insurance regularly present in the forum state." *Id.* Second, the court should

S.W.2d 527 (Tex.App.—Houston [1st Dist.] 1990, writ denied), in support of his contention that Dr. Noyes's treatment of patients from other states would make it reasonably foreseeable that he would be subject to the jurisdiction of Texas courts. *Rossman* and *Eli Lilly & Co.* both deal with insurance companies and the foreseeability of their insureds' conduct in other jurisdictions making them susceptible to the jurisdiction of the courts in those forums. *Design Info. Sys.* and *General Elec. Co.* deal with conduct directed at Texas residents in Texas. These cases do not support Clark's argument that Dr. Noyes's treatment in Cincinnati of residents from states other than Texas makes him subject to the jurisdiction of Texas courts.

consider "the nature of the particular insurance contract and its coverage." *Id.*

The insured, English China, had approximately 120 subsidiaries doing business in many countries, including the United States. Southern Clay, the subsidiary involved in the underlying controversy, was a Texas corporation. The policy and endorsements in question provided coverage for third-party liability occurring anywhere in the world that English China or its affiliates or subsidiaries did business. *Id.* at 225, 232. The court concluded that under the facts and circumstances of the case, it was reasonably foreseeable that an insurance dispute could arise anywhere, including any one of the states in the United States, and that Guardian Royal established minimum contacts with Texas. *Id.* at 232. The court went on to hold, however, that the assertion of personal jurisdiction over the foreign insurance company was unreasonable and did not comport with fair play and substantial justice. *Id.* at 233.

Clark's case is vastly different from *Guardian Royal.* In deciding *Guardian Royal,* the court looked to the language of the insurance contract in determining that the insurance company established minimum contacts with Texas. *See id.* at 232. Medical services are personal. *See Wright,* 459 F.2d at 289. In treating patients from Kentucky, New York, California, or any other state besides Texas at the Cincinnati clinic, Dr. Noyes was not engaged in activity or conduct purposefully directed toward Texas. *See Guardian Royal,* 815 S.W.2d at 226. Additionally, we cannot extend *Guardian Royal* to find that by Dr. Noyes's treatment of patients from other states, he could reasonably anticipate being involved in litigation in Texas. It was not foreseeable that treatment of a New York patient would give rise to a medical malpractice action involving a different patient in Texas. We conclude that Dr. Noyes's contacts with patients from states other than Texas, such as they were, are insufficient to establish personal jurisdiction in Texas.

### 2. Treatment of Other Texas Residents

■ Clark claims that Dr. Noyes treated patients who were Texas residents, prescribed, directed, and monitored physical therapy for these patients, and prescribed medication for Texas residents. He also claims that Dr. Noyes located Texas physical therapists and referred patients for treatment, as well as receiving referrals from Texas physicians. Clark contends that Dr. Noyes's actions were sufficient to establish minimum contacts such that general jurisdiction may be asserted over Dr. Noyes. We disagree.

In his deposition, Dr. Noyes testified that he saw eleven individuals over a period of ten years who may have had some connection with Texas. Six of those individuals had some direct Ohio or Kentucky connection at the time they received their treatment. In each case, the individual consulted Dr. Noyes at the clinic in Cincinnati. Dr. Noyes does not travel outside Cincinnati to treat patients. Neither Dr. Noyes nor the Cincinnati Sportsmedicine Center solicited business in Texas and the clinic advertised only locally in the Cincinnati–Kentucky area.

The clinic's general policy regarding after care was to refer the patient back to the treating physician to continue care if any particular problems arose. If physical therapy was necessary, the physical therapist from the clinic would outline what was required and would sometimes call the physical therapist where the patient lived. However, the patient's local physical therapist assumed responsibility for the patient. Where the patient was referred by his personal doctor, Dr. Noyes would ask the patient which physical therapist should be contacted. Where there was none, Dr. Noyes would look in a book to try to find one or ask the patient to go to the main hospital in his own area to find one. Dr. Noyes testified that no Texas doctors commonly or regularly refer patients to him.

Dr. Noyes further testified that he rarely prescribed medication for out-of-state patients. He preferred to have any medication filled by the patients' local physicians.

Minimum contacts must be based on "some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239). The unilateral activity of those claiming a relationship with the non-resident defendant cannot satisfy the minimum contacts requirement. *World–Wide Volkswagen Corp.,* 444 U.S. at 298, 100 S.Ct. at 567–68 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239). Dr. Noyes testified that he treated all patients in Cincinnati. He did not direct any part of his medical practice towards Texas or travel to Texas to treat patients. The fact that some of his patients may have had some contacts with Texas is not sufficient to establish minimum contacts by Dr. Noyes. We decline to find jurisdiction on this basis.

### 3. Corporate Contacts with Texas

■ Clark asserts that Dr. Noyes maintains continuous and systematic contacts with Texas by virtue of Dr. Noyes's "substantial business interests" in Texas. Clark specifically alleges that Dr. Noyes participated in and profited from the development of three products: (1) the Cincinnati Knee Brace; (2) the 3M Arthroscopic Pump; and (3) Biodex exercise equipment. Clark argues that these products are marketed and distributed nationwide, including Texas. Clark also alleged that Dr. Noyes still collects money from the 3M business venture.

■ Dr. Noyes testified that he did not have any business connection with Texas and had no interest in a business that had an interest in a Texas entity. Dr. Noyes was an officer, director, and shareholder in Brace Technology, Inc. (BTI), which produced the Cincinnati Knee Brace from 1989 until 1991. The knee brace was produced in Cincinnati. There was a limited marketing effort, including a few advertisements in professional journals. The brace was marketed nationwide, but Dr. Noyes did not know whether anyone in Texas purchased the brace. Dr. Noyes was not involved in marketing the brace, nor was he in charge of BTI. He provided consultation services. Dr. Noyes further testified that BTI no longer exists. The brace was sold to a California corporation. Dr. Noyes did not work outside Ohio and Kentucky. BTI was incorporated in Ohio and had no certificate to do business in Texas. Assuming, without deciding, that Texas courts could assert jurisdiction over BTI, this is not sufficient to assert jurisdiction over Dr. Noyes. Generally, jurisdiction over an individual cannot be based upon jurisdiction over a corporation. *See Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir. 1985); *see also Leon, Ltd. v. Albuquerque Commons Partnership,* 862 S.W.2d 693, 708 (Tex.App.—El Paso 1993, n.w.h.).

Regarding the 3M Arthroscopic Pump, Dr. Noyes testified that he acted as a consultant for 3M. The 3M corporation approached Dr. Noyes for advice on the arthroscopic pump it was developing. Dr. Noyes did a few measurements on fluids for the corporation. The corporation took the information and developed the pump. He provided about twelve hours of consultation services to 3M and did no work outside Ohio or Kentucky. He had a short-term contract under which he received consultation fees and royalties. However, Dr. Noyes no longer receives royalties.

The record does not support Clark's contention that Dr. Noyes currently receives a profit from the products with which he had some involvement. Further, the record does not show that by his involvement with the products, Dr. Noyes purposefully directed his activity towards Texas such that he availed himself of the privileges and protections of the state. *See Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032 (placement of product into stream of commerce, without more, not act by defendant purposefully directed towards forum state). Assuming, without deciding, that there were sufficient contacts to allow Texas courts to assert jurisdiction over 3M, this does not establish personal jurisdiction over Dr. Noyes. *See Rush v. Savchuk,* 444 U.S. 320, 329, 100 S.Ct. 571, 577–78, 62 L.Ed.2d 516 (1980); *Siskind v. The Villa Foundation for Education,* 642 S.W.2d 434, 438 (Tex.1982). Dr. Noyes's involvement with 3M is comparable to that of an employee. "Absent some allegation of a specific act in Texas, or one with reasonably foreseeable consequences within this state's borders, a non-resident employee of a foreign corporation cannot be sued in Texas simply because his or her employer solicits business here." *Siskind,* 642 S.W.2d at 438.

The trial court was not presented with any evidence regarding Dr. Noyes's connection with Biodex. Clark received a letter from Dr. Noyes's counsel approximately three months after the trial court determined there was no jurisdiction over Dr. Noyes. The letter informed Clark that Dr. Noyes had forgotten about a consultation Dr. Noyes did for Biodex on behalf of the Cincinnati Sportsmedicine Center and described his role. We do not consider this evidence in making our determination.[5] However, even if we did consider this evidence, Dr. Noyes's consultation services to Biodex on behalf of the Cincinnati Sportsmedicine Center are not a basis for asserting personal jurisdiction over Dr. Noyes. *See Siskind,* 642 S.W.2d at 438.

### 4. Publications in Professional Journals

■ Clark also asserts that Dr. Noyes established minimum contacts with Texas through his submission of articles to professional journals which were circulated nationwide, including Texas. Clark argues that various individuals, such as physicians and students, use these articles to learn and formulate opinions about orthopedics and implement orthopedic procedures on patients. Dr. Noyes testified that he submitted articles and papers to various journals and books for publication. He received no remuneration for the articles. He also did not know where the journals and books were distributed. This is not a situation where a plaintiff is seeking to establish personal jurisdiction over a defendant in a libel suit due to intentional conduct by a non-resident calculated to cause harm to a Texas resident in Texas. *See Calder v. Jones,* 465 U.S. 783, 791, 104 S.Ct. 1482, 1488, 79 L.Ed.2d 804 (1984). Clark is attempting to use the fact that journals which published articles authored by Dr. Noyes may have been distributed in Texas as a means to establish general jurisdiction over Dr. Noyes in a suit unrelated to the publication of the articles. We cannot say that Dr. Noyes purposefully availed himself of the privileges and protections of Texas simply by submitting articles for publication in journals which may have been circulated in Texas. We decline to find minimum contacts on this basis.

### 5. Other Contacts with Texas

■ Clark also argues that Texas courts have jurisdiction over Dr. Noyes because Dr. Noyes attended medical conferences in Texas and lectured at at least one such conference; Dr. Noyes served as an examiner for the American Board of Orthopedic Examiners; Dr. Noyes attended the United States Air Force Officer Training School in San Antonio, Texas; and Dr. Noyes was born in El Paso, Texas.

Dr. Noyes testified that he was born in El Paso, Texas, and spent approximately one week in the hospital. However, his parents were New Mexico residents at the time of his birth. Additionally, Dr. Noyes attended United States Air Force Officer Training School in San Antonio, Texas in 1971. The school lasted one week. Dr. Noyes never lived in Texas, nor has he ever stayed in Texas for a prolonged period of time. He does not own or lease any real property in Texas.

Dr. Noyes attended two national conferences dealing with orthopedics and physical therapy in Texas. These national conferences alternated locations and in each of the years in question, the conference was located in Texas. At one conference, Dr. Noyes spoke on the subject of orthopedics generally. He was one of many speakers.

Dr. Noyes also testified that he served as an examiner for the American Board of Orthopedic Examiners. He participated in three examinations, all of which were given in Chicago, Illinois. The students were from all around the world.

Minimum contacts must be based on "some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invok-

---

**5.** "We are required to consider only evidence tendered or admitted at the time of the … hearing." *Deerfield Land Joint Venture v. Southern Union Realty Co.,* 758 S.W.2d 608, 610 (Tex. App.—Dallas 1988, writ denied). If we were to consider evidence for the first time, never presented to the trial court, we would in effect be converting this Court into a court of original jurisdiction, not appellate jurisdiction. *See id.*

ing the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183–84 (quoting *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239–40). We cannot conclude that by these limited contacts, Dr. Noyes purposefully availed himself of the privileges and protections of the laws of Texas.

### 6. Cumulative Effect of Contacts

■ "In analyzing minimum contacts, it is not the number, but rather the quality and nature of the non-resident defendant's contacts with the forum state that is important." *Guardian Royal*, 815 S.W.2d at 230 n. 11 (citing *Texas Commerce Bank v. Interpol '80 Ltd.*, 703 S.W.2d 765, 772 (Tex.App.—Corpus Christi 1985, no writ)); *see also Stuart*, 772 F.2d at 1192. "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King Corp.*, 471 U.S. at 475 n. 18, 105 S.Ct. at 2183–84 n. 18. However, a single or occasional acts related to the forum state are not sufficient to establish jurisdiction if " 'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum." *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 318, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945)). The combined total of these contacts is not sufficient to justify the exercise of personal jurisdiction over Dr. Noyes.

### CONCLUSION

Constitutional due process requires that: (1) the non-resident defendant purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction comport with traditional notions of fair play and substantial justice. The evidence before us establishes that Dr. Noyes did not direct such activity toward Texas as would demonstrate that he purposefully availed himself of the privileges and protections of the state's laws to the extent he could reasonably anticipate being haled into Texas courts. *See Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183–84. Because we hold that Dr. Noyes lacked sufficient minimum contacts with Texas to justify the assertion of personal jurisdiction, it is not necessary to consider the second prong of the due process analysis.

The trial court did not err in dismissing the action for want of jurisdiction. We overrule appellant's point of error.

We affirm the trial court's order.