FILED

January 27 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0013

DA 14-0013

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 18

THE MILKY WHEY, INC.,

      Plaintiff and Appellant,

  v.

DAIRY PARTNERS, LLC, a limited
liability company, and SCOTT STEFAN,

      Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District,<br>In and For the County of Missoula, Cause No. DV-13-1067<br>Honorable Robert L. Deschamps, III, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            David C. Berkoff (argued), Berkoff Law Firm, P.C., Missoula, Montana

      For Appellees:

            Quentin M. Rhoades (argued); Francesca di Stefano, Rhoades &
            Siefert, P.L.L.C., Missoula, Montana

                  Argued:  October 29, 2014
             Submitted:  November 5, 2014
              Decided:  January 27, 2015

Filed:

                            Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    The Milky Whey, Inc., appeals the decision of the Fourth Judicial District Court granting Dairy Partners, LLC, and Scott Stefan's motion to dismiss for lack of personal jurisdiction.  We address the following issues on appeal:

> *1. Whether the District Court correctly ruled that Dairy Partners' notice of appearance of counsel did not waive jurisdictional objections.*
>
> *2. Whether the District Court correctly held that Montana's long-arm statute does not confer personal jurisdiction over Dairy Partners.*

¶2    We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    Milky Whey is a registered Montana corporation based in Missoula, Montana.  It operates as a dairy broker, supplying food manufacturers in the U.S. and Canada with dairy commodities purchased from suppliers and manufacturers.  Dairy Partners is a dairy supply company located in Minnesota that sells products to dairy brokers like Milky Whey.

¶4    From 2010 to 2013, Milky Whey and Dairy Partners[1] completed nine purchase orders through telephone, fax, or e-mail, valuing over $181,000.  Most of these previous sales involved Dairy Partners contacting Milky Whey in Montana.  On January 23, 2013, in a transaction initiated by Milky Whey, it prepaid $12,500 to purchase 10,000 pounds of a dairy product called "Swiss Trim" from Dairy Partners.  Milky Whey wired the

---

[1] The other defendant, Scott Stefan, is Dairy Partners' authorized agent and manager.  For convenience, the remainder of this opinion will refer to both defendants collectively as Dairy Partners.

purchase money from Missoula to Dairy Partners in Minnesota. Dairy Partners shipped the product to its warehouse in Salt Lake City on January 31, 2013.

¶5 When Milky Whey picked up the product from the warehouse in Salt Lake on March 7, 2013, it discovered that much of the product had become moldy and unusable. Milky Whey has not suggested that it intended to bring the cheese into Montana, and none of the product ever entered the state. Through e-mail communication, the parties attempted to resolve the issue amicably, but Dairy Partners did not reimburse Milky Whey for the moldy product.

¶6 Milky Whey filed this suit on September 26, 2013, alleging breach of contract, breach of warranty, unjust enrichment, and breach of an obligation to pay. Dairy Partners was served on October 3, 2013, and filed a notice of appearance of counsel on October 30, 2013. Two weeks later, on November 12, Dairy Partners filed a motion to dismiss for lack of personal jurisdiction. Dairy Partners later filed an answer to the complaint. After considering the parties' briefs and affidavits on the motion, the District Court agreed with Dairy Partners and dismissed the action, holding that the Defendants "do not come within Montana's long-arm jurisdiction statute . . . because they have taken no action under the statute and the exercise of jurisdiction would not be reasonable." Milky Whey appeals.

**STANDARD OF REVIEW**

¶7 We review de novo a district court's decision on a motion to dismiss for lack of personal jurisdiction, construing the complaint "in the light most favorable to the

3

plaintiff." *Grizzly Sec. Armored Express, Inc. v. Armored Grp., LLC*, 2011 MT 128, ¶ 12, 360 Mont. 517, 255 P.3d 143.

## DISCUSSION

¶8    *1.    Whether the District Court correctly ruled that Dairy Partners' notice of appearance of counsel did not waive jurisdictional objections.*

¶9    A Montana court may acquire jurisdiction over a person through service of process or "by the voluntary appearance in an action by any person either personally or through an attorney, authorized officer, agent, or employee." M. R. Civ. P. 4(b)(2). Consent to the exercise of a court's jurisdiction constitutes a waiver of the defense. *El Dorado Heights Homeowners' Ass'n v. Dewitt*, 2008 MT 199, ¶ 16, 344 Mont. 77, 186 P.3d 1249. Rule 12(b), M. R. Civ. P., states, "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." The rule continues, "But a party may assert the following defenses by motion," and the subsequent list includes the defense of lack of personal jurisdiction. M. R. Civ. P. 12(b)(2). The same rule clarifies that "[a] motion asserting any of these defenses must be made before a pleading if a responsive pleading is allowed." A party waives the defense of a lack of personal jurisdiction by "omitting it from a motion in the circumstances described in Rule 12(g)(2) [Joining Motions]; or . . . failing to either:

> (i) make it by motion under this rule; [or]
> (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course[.]

M. R. Civ. P. 12(h)(1).

4

¶10     Milky Whey argues that Dairy Partners waived its jurisdictional objections by failing to raise personal jurisdiction as a defense in its notice of appearance. Dairy Partners did not raise a jurisdictional argument until its motion to dismiss two weeks after its notice of appearance. Milky Whey relies on cases explaining that "objection to lack of personal jurisdiction must be made at the time of the initial appearance in the District Court." *Spencer v. Ukra*, 246 Mont. 430, 433, 804 P.2d 380, 382 (1991); *see also Spiker Communs. v. State ex rel. DOC*, 1998 MT 32, ¶¶ 13-14, 287 Mont. 345, 954 P.2d 1145; *El Dorado Heights Homeowners' Ass'n*, ¶ 16.

¶11     Rule 12(b) plainly states that the defense of a lack of personal jurisdiction is waived only if a party does not raise the defense before filing a responsive pleading. The District Court reasoned that Dairy Partners' notice of appearance was not a pleading under M. R. Civ. P. 12(b), and thus the filing of a notice of appearance prior to a motion to dismiss for lack of jurisdiction did not waive the defense. Rule 7, M. R. Civ. P., identifies documents that are considered pleadings—it does not include a notice of appearance.

¶12     The cases Milky Whey cites in which we have found waiver involve significantly different facts. In *Spencer*, "initial appearance" referred to the first substantive motion filed by the defendants. The court held that the defendants waived a personal jurisdiction defense where they had moved the court to set aside a default judgment as their first appearance. While the court cited, perhaps misleadingly, the contemporaneously filed "Notice of Appearance" to support its reasoning, it rested its conclusion on the

5

defendants' substantive motion. *Spencer*, 246 Mont. at 435, 804 P.2d at 384 ("[D]efendants made an initial appearance to vacate the default . . . .").

¶13 Similarly, in *El Dorado Heights*, the court relied on the fact that the defendant "had already appeared in the case many times, both physically in court and through motions and briefs submitted to the court through her attorney." *El Dorado Heights*, ¶ 16. Prior to seeking dismissal for lack of personal jurisdiction, the defendant had entered into a stipulation with other parties that was filed with the court, and subsequently had filed a motion seeking a stay and amendment or rescission of the stipulation, along with additional documents regarding the restrictive covenants at issue in the case. *El Dorado Heights*, ¶¶ 8-11. We agreed that, although she was not named as a party until later, the defendant had consented to the court's jurisdiction by participating in the action. *El Dorado Heights*, ¶ 16; *see also Wamsley v. Nodak Mut. Ins. Co.*, 2008 MT 56, ¶ 27, 341 Mont. 467, 178 P.3d 102 (personal jurisdiction waived by filing motions seeking relief from the court on other, non-jurisdictional grounds).

¶14 In *Spiker*, the Court relied on a prior version of Rule 12(b), which provided that, if venue of the action was improper, "the defendant must at the time of defendant's *first appearance* request by motion that the trial be had in the proper county." M. R. Civ. P. 12(b)(ii) (1997) (emphasis added). The Court held, "Under the clear language of Rule 12(b)(ii), M. R. Civ. P., the State should have included its request that venue be changed to Lewis and Clark County in its notice of appearance of counsel." The parties

do not challenge venue, and the rule has been amended since *Spiker* was decided. Its holding is inapplicable here.

¶15 In this case, Dairy Partners met the requirements of Rule 12(b) by filing its motion contesting personal jurisdiction before it filed a responsive pleading. M. R. Civ. P. 12(b). Rule 12(h) requires only that the party raise the defense "at the time the first significant defensive move is made—whether it be by way of a Rule 12 motion or a responsive pleading." See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1391, 515 (3d ed. 2004); *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F. Supp. 1279, 1283 (S.D.N.Y. 1989) (defendants did not waive personal jurisdiction defense by filing a notice of appearance because they promptly challenged the court's jurisdiction).[2] A notice of appearance serves to direct any additional filings to the defendant's attorney; it is not a pleading and does not acquiesce to the jurisdiction of the court unless it is joined with some other motion or responsive pleading.

¶16 Rule 12 does not require that a party contest personal jurisdiction prior to or contemporaneously with a notice of appearance of counsel, and our cases should not be interpreted to imply a stricter requirement than that articulated by Montana's Rules of Civil Procedure. Dairy Partners moved to dismiss on November 12, 2013, before filing its first responsive pleading. We agree with the District Court that Dairy Partners did not waive its jurisdiction defense.

---

[2] The pertinent portions of Montana's Rule 12 are identical to its counterpart in the federal rules. F. R. Civ. P. 12(b), (h).

¶17    *2. Whether the District Court correctly held that Montana's long-arm statute does not confer personal jurisdiction over Dairy Partners.*

¶18    We apply a two-step test "to determine whether a Montana court may exercise personal jurisdiction over a nonresident defendant." *Tackett v. Duncan*, 2014 MT 253, ¶ 22, 376 Mont. 348, 334 P.3d 920. We first determine whether personal jurisdiction exists under M. R. Civ. P. 4(b)(1). Personal jurisdiction may exist under Rule 4(b)(1) in one of two ways: a party may be "found within the state of Montana" and subject to general jurisdiction, or the claim for relief may arise from any of the acts listed in Rule 4(b)(1)(A-G) and create specific jurisdiction for the purpose of litigating that particular claim. If personal jurisdiction exists under the first step of the test, we then determine whether the exercise of personal jurisdiction conforms with "the traditional notions of fair play and substantial justice embodied in the due process clause." *Cimmaron Corp. v. Smith*, 2003 MT 73, ¶ 10, 315 Mont. 1, 67 P.3d 258 (citing *Threlkeld v. Colorado*, 2000 MT 369, ¶ 9, 303 Mont. 432, 16 P.3d 359). "[I]f personal jurisdiction does not exist under the first part of the test, further analysis under the second part of the test is unnecessary." *Cimmaron*, ¶ 10.

¶19    M. R. Civ. P. 4(b)(1) subjects "[a]ll persons found within the state of Montana" to the general personal jurisdiction of the courts of this state.[3] To be "found" within Montana for general jurisdiction purposes, "it is necessary that the defendants' activities are 'substantial' or 'systematic and continuous.'" *Edsall Constr. Co. v. Robinson*, 246

---

[3] While Milky Whey did not raise general jurisdiction in its briefs on appeal, it did make an argument for general jurisdiction during oral argument before this Court. We will address its general jurisdiction argument briefly.

8

Mont. 378, 382, 804 P.2d 1039, 1042 (1991) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154 (1945)).

> Like a defendant that is present within the forum state, a foreign corporate defendant that is doing business in the forum state will be subject to the general jurisdiction of that state's courts and thus may be sued in that state on any cause of action, regardless of whether or not that cause of action arises from the defendant's contacts with the forum state.

4A Wright & Miller, *Federal Practice & Procedure*, Civil 3d § 1069.2 at 127 (2002).

¶20    Dairy Partners is not a Montana corporation. Dairy Partners never physically entered Montana and has not purchased or sold any product in Montana. Aside from its electronic and telephone communications with Milky Whey, nothing in the record connects Dairy Partners to Montana. Dairy Partners does not conduct substantial, systematic or continuous activities in Montana. It certainly could not be sued here on any cause of action that did not arise from its contacts with Montana. Dairy Partners thus cannot be "found within" the state as contemplated by the general jurisdiction provisions of M. R. Civ. P. 4(b)(1). Montana courts do not have general personal jurisdiction over Dairy Partners.

¶21    Absent general personal jurisdiction, Montana courts may exercise specific jurisdiction over any person "as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the . . . acts" listed in the state's "long-arm statute," adopted in Montana through this Court's Rules of Civil Procedure. M. R. Civ. P. 4(b)(1)(A-G). Milky Whey argues that Montana should exercise personal jurisdiction over Dairy Partners under subsections A and B, which provide for the

exercise of personal jurisdiction over parties who transact any business within Montana or commit any act resulting in accrual within Montana of a tort action, respectively.

¶22    We begin with Milky Whey's contention that tort actions accrued within Montana. M. R. Civ. P. 4(b)(1)(B).  Milky Whey first argues that a tort action accrued in Montana when Dairy Partners promised to pay Milky Whey for damages resulting from the mold on the cheese, but then refused to make good on that promise.  Milky Whey argues that these acts resulted in a tortious violation of § 27-1-312, MCA, for refusing to pay an obligation that has been completed.

¶23    Milky Whey cites no authority to support its claim that violation of an obligation to pay a Montana company pursuant to a contractual arrangement constitutes the accrual of a tort in Montana.  A tort action arises from a duty imposed by operation of law and not by mere agreement of the parties.  "Separate tort liability depends on whether the breaching party violated a legal duty that would exist in the absence of a contract." *Dewey v. Stringer*, 2014 MT 136, ¶ 8, 375 Mont. 176, 325 P.3d 1236 (citation omitted). Section 27-1-312, MCA, is a statute defining the measure of damages for breach of an obligation to pay money.  In this case, the obligation arose from the parties' agreement and not by operation of law.  The legal duty that Dairy Partners alleges was violated would not exist in the absence of a contract, so its violation does not give rise to a tort; accordingly, it does not give rise to jurisdiction under M. R. Civ. P. 4(b)(1)(B) either.

¶24    Milky Whey next argues that a tort action accrued in Montana when Dairy Partners delivered moldy cheese, thereby allegedly breaching statutory warranties of

10

merchantability and fitness for a particular purpose. Milky Whey cites no authority for this argument and its briefs do not develop any argument to support its theory of accrual of this claim in Montana. Assuming for the sake of argument that this claim sounds in tort, a tort does not accrue in Montana when all acts giving rise to the claims occur in another state. *Bi-Lo Foods v. Alpine Bank*, 1998 MT 40, ¶ 31, 287 Mont. 367, 955 P.2d 154; *Bird v. Hiller*, 270 Mont. 467, 472-73, 892 P.2d 931, 934 (1995). In *Bi-Lo Foods*, the plaintiff argued that the Court could exercise personal jurisdiction over nonresident defendants where "tortious activity was committed outside the forum state but where the resulting injury was experienced in the forum state." *Bi-Lo Foods*, ¶ 21. We rejected this argument, observing that the "focus must be on the place where the services are rendered." *Bi-Lo Foods*, ¶ 27 (quoting *McGee v. Riekhof*, 442 F. Supp. 1276, 1278 n.1 (D. Mont. 1978)). Here, negotiation, transfer of money, and transfer of product all occurred outside Montana. Dairy Partners delivered the cheese to Utah, where Milky Whey allegedly discovered mold. Focusing on the place where the services were rendered reveals that the alleged breach of warranty did not accrue in Montana. Therefore, M. R. Civ. P. 4(b)(1)(B) does not confer jurisdiction over Dairy Partners.

¶25 Under Rule 4(b)(1)(A), a defendant also may be subject to specific jurisdiction if the claim arises from its "transaction of any business within Montana[.]" M. R. Civ. P. 4(b)(1)(A). The "transacting business" provision of the long-arm statute requires "far fewer contacts with the forum state than are necessary to support general jurisdiction on the theory that the defendant is 'doing business' in the forum state."

11

4A Wright & Miller, § 1069.3 at 161. Nonetheless, the same factors are considered, "such as the defendant company's local negotiations for various types of commercial transactions, the solicitation of business within the state, prior litigations in the forum, the presence of agents in the state, and the existence of ongoing contractual relationships with residents of the forum state." 4A Wright & Miller, § 1069.3 at 156-61.

¶26 Here, the claim arises entirely out of a transaction that took place outside of Montana. For the transaction on which this claim is based, Milky Whey reached out of Montana to contact Dairy Partners. Dairy Partners shipped the Swiss Trim to Utah. Milky Whey arranged to pick up the Swiss Trim in Utah, and sent money to Minnesota. Although Dairy Partners acknowledges that it initiated some previous purchase orders between the parties, the record is clear that this claim arose from a transaction where Milky Whey ordered the Swiss Trim from Dairy Partners. The transaction was not initiated by the non-resident defendant and was not to be performed in Montana. The record reveals no negotiations or any written agreement for Milky Whey's purchase of the Swiss Trim, only the payment of money sent by Milky Whey to Minnesota for a product it picked up in Utah.

¶27 We have held that the exercise of personal jurisdiction is proper under M. R. Civ. P. 4(b)(1)(A) where substantial interactions occur within Montana. *E.g. B.T. Metal Works v. United Die & Mfg. Co.*, 2004 MT 286, ¶¶ 17, 29, 323 Mont. 308, 100 P.3d 127; *Spectrum Pool Prods., Inc. v. MW Golden, Inc.*, 1998 MT 283, ¶ 11, 291 Mont. 439, 968 P.2d 728. Entering into contracts with multiple Montana businesses or negotiating

12

contracts between businesses may constitute substantial interactions. *Grizzly*, ¶ 30; *Nelson v. San Joaquin Helicopters*, 228 Mont. 267, 270, 742 P.2d 447, 448 (1987). Even extensive interstate communications, however, do not give rise to jurisdiction where the contract is to be performed in another state. *Edsall*, 246 Mont. at 382, 804 P.2d at 1042; *Cimmaron*, ¶¶ 13-16; *Bird*, 270 Mont. at 473, 892 P.2d at 934. "It is well-settled that a nonresident defendant's mere act of entering into a contract with a forum resident does not provide the necessary jurisdictional contact between the defendant and the forum state." *Simmons v. State*, 206 Mont. 264, 279, 670 P.2d 1372, 1380 (1983); *Edsall*, 246 Mont. at 382, 804 P.2d at 1042.

¶28 *Cimmaron* is particularly germane: a Montana business, Cimmaron, contracted with a Pennsylvania corporation, Budget, to act as its collection agent. We held that the parties' business dealings did not constitute the transaction of business within this state. *Cimmaron*, ¶ 20. Although Budget's agent traveled to Montana to negotiate the terms of the agreements, we determined that personal jurisdiction had not been established on the facts alleged: Budget's sole contacts with Montana were the agreements it entered into with Cimmaron, but the services that Budget was required to perform under the collection agreement were to be performed in Pennsylvania. *Cimmaron*, ¶¶ 13-15. Cimmaron sent its account information to Budget in Pennsylvania in order to allow Budget to perform its services there under the collection agreement, and "all of the claims made by Cimmaron in its complaint pertain to actions the Respondents took, or failed to take, in Pennsylvania." *Cimmaron*, ¶ 15.

13

¶29  Like Budget in the *Cimmaron* case, Dairy Partners has dealt with a Montana company, but has not reached into Montana or availed itself of the privilege of doing business in this forum. Milky Whey claims that its interactions with Dairy Partners "were part of a long-term and purposeful engagement of [Milky Whey's] services in Montana." This argument overlooks the fact that all of the claims in Milky Whey's complaint arose from its discovery of moldy cheese in Utah. Dairy Partners never sold any product or engaged in the performance of any service in Montana. Dairy Partners does not have offices in Montana or solicit business in Montana. It did not send any representatives to Montana to negotiate contracts, and in fact does not appear to have entered into any written contracts with Milky Whey aside from standard purchase orders. No other Montana businesses besides Milky Whey were involved in the transaction. Milky Whey is correct that Montana's long-arm statute does not require that a product actually be sold in or delivered to Montana, nor does it require the defendant's physical presence in Montana. Milky Whey concedes in its briefing, however, that "Montana must have some significant involvement in the business transacted by the parties and the non-resident must have purposely engaged in business with the Montana business for jurisdiction to arise."

¶30  At oral argument, Milky Whey emphasized that Dairy Partners markets its products online. Milky Whey directed the court to *Zippo Mfg. Co. v. Zippo DOT Com, Inc.*, 952 F. Supp. 1119 (W. D. Pa. 1997), a leading personal jurisdiction case involving web-based transactions. Although Dairy Partners operates a website, this clearly is not

14

an e-commerce case; Milky Whey did not allege that it interacted with Dairy Partners' website in any way. The parties used e-mail to communicate, but—as this Court long has observed—"[i]nterstate communication is an almost inevitable accompaniment to doing business in the modern world, and cannot by itself be considered a 'contact' for justifying the exercise of personal jurisdiction." *Simmons*, 206 Mont. at 280, 670 P.2d at 1380.

¶31    There is no question that Dairy Partners' acts or omissions giving rise to Milky Whey's claims in this case did not arise from Dairy Partners' purposeful engagement in activities in Montana, primarily because it was Milky Whey that purchased the product from Dairy Partners and the allegedly defective product was delivered to Utah by agreement of the parties. Dairy Partners' "suit-related conduct [did not] create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. ___, 134 S. Ct. 1115, 1121-22 (2014). Milky Whey emphasizes that the parties had an established relationship, having engaged in nine similar transactions over the preceding three years. We cited a similar history of business dealings in *Grizzly* as an important factor in determining whether the non-resident defendant had subjected itself to personal jurisdiction in Montana. *Grizzly*, ¶ 30. But in *Grizzly*, the business transaction that gave rise to the claim compelled the nonresident defendant to enter "several contracts with other Montana businesses in its attempt to resolve the dispute with Grizzly." *Grizzly*, ¶ 30. In addition to its business transactions with the Montana plaintiff, the non-resident defendant in *Grizzly* advertised that it serviced vehicles in Montana, had contact with other Montana businesses, and entered into contracts with more than one Montana

15

business. *Grizzly*, ¶¶ 32-33. *Grizzly* should not be taken to mean that a nonresident defendant's relationship with the Montana plaintiff alone may satisfy the long-arm statute, which, as we recognized, requires that "the claim arise[] out of that person's transaction of business within the state." *Grizzly*, ¶ 23.

¶32 Examining our prior cases, it appears that where we have found the transaction of business to have occurred in Montana, the non-resident had done something more than communicate or exchange purchase orders with a Montana resident. In *Nelson*, for example, noting that the defendant's conduct was more extensive than "a few phone calls back and forth between the parties," we determined that the non-resident company's lengthy contractual relationship with another Montana business, its negotiation of a contract with the Montana plaintiff, and its arrangement of a contractual relationship between the two Montana businesses constituted "purposeful interjection into Montana" by the non-resident defendant. *Nelson*, 228 Mont. at 272, 742 P.2d at 450.

¶33 In *Spectrum Pool Products*, the non-resident defendant initiated contact to purchase a custom product manufactured in Montana, and negotiated with the Montana company "by telephone and in writing concerning price, delivery, servicing, and specific design elements to be included[.]" *Spectrum Pool Prods.*, ¶ 4. Later, at the non-resident defendant's request, additional services were performed on the custom-designed product in Montana. The defendant then refused to make payment in Montana as promised. This suit-related conduct was held sufficient to confer personal jurisdiction. *Spectrum Pool Prods.*, ¶ 11.

16

¶34 Our determination that the non-resident defendant in *B.T. Metal Works* had subjected itself to personal jurisdiction in Montana rested on facts that went beyond the defendant's longstanding business relationship with the Montana plaintiff; the non-resident defendant also had specifically manufactured a product for a Montana business and had shipped its product into Montana on approximately twenty-two separate occasions. *B.T. Metal Works*, ¶¶ 25-27.

¶35 In sum, that Dairy Partners knew it was transacting with a Montana business is insufficient to confer personal jurisdiction in Montana. *Edsall*, 246 Mont. at 383, 804 P.2d at 1042. Applying Montana's long-arm statute, we conclude that Dairy Partners is not subject to jurisdiction in Montana. Milky Whey's claim does not arise from Dairy Partners' transaction of business within this state simply because Milky Whey happens to be a Montana business. *Edsall*, 246 Mont. at 383, 804 P.2d at 1042 ("The contract was to be performed in Utah, the bidding took place in Utah, and the initial contact was made by Edsall. . . . The *only* tie this suit has to Montana is that it is Edsall's home state, and that alone does not justify a determination that Montana is the proper forum for this dispute."); *Cimmaron*, ¶ 14 ("[W]e have concluded that personal jurisdiction is not acquired through interstate communications made pursuant to a contract that *is to be performed in another state*." (emphasis in original) (citing *Bird*, 270 Mont. at 473, 892 P.2d at 934)).

¶36    Because personal jurisdiction does not exist under the first part of the Rule 4(b)(1) test, analysis of whether the exercise of jurisdiction comports with due process is unnecessary. *Cimmaron*, ¶ 10.

## CONCLUSION

¶37    The District Court correctly determined that it could not exercise personal jurisdiction over Dairy Partners. Its judgment is affirmed.

/S/ BETH BAKER

We concur:

/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Chief Justice Mike McGrath dissenting.

¶38    Milky Whey should be allowed to proceed on its claim in Montana courts. I dissent from the resolution of Issue 2 and concur with the Court's resolution of Issue 1.

¶39    Montana courts have specific jurisdiction to entertain the civil action brought by Milky Whey against Dairy Partners. I agree that the jurisdictional analysis must begin with a determination of whether Dairy Partners transacted "any business" in Montana as provided in M. R. Civ. P. 4B(1).

¶40    The complaint alleges only a single transaction between Milky Whey and Dairy Partners, but there had been numerous other transactions between the parties. Facts acknowledged by the parties establish that not only did Milky Whey purchase products from Dairy Partners, but Dairy Partners also made substantial purchases of products from

18

Milky Whey. In the three years before the transaction at issue, Milky Whey sold over $181,000 worth of products to Dairy Products in nine separate transactions. Dairy Products solicited those sales by phone or email communications directed to the Milky Whey office in Missoula, Montana. Milky Whey would similarly respond to Dairy Products to consummate the details of the sale.

¶41 These facts support the conclusion that Dairy Products transacted business in Montana for purposes of specific jurisdiction under M. R. Civ. P. 4B(1). As in *Spectrum Pool Prod.,* ¶ 16, Dairy Products "purposely interjected itself into Montana" through its several dealings with Milky Whey. This is not a "mere act of entering into a contract with a forum resident," *Simmons*, 206 Mont. at 291, 670 P.2d at 1386, but represents purposeful acts through which Dairy Products did repeated business with a Montana company. Milky Whey is a Montana business. It generates income and employment here, utilizes local infrastructure, and pays taxes. The payment to Dairy Products originated in Montana, and the refund promised by Dairy Products (according to the allegations of the complaint) would have accrued in Montana. Montana, as the forum state, provided the setting which allowed Dairy Products to engage in the various transactions with Milky Whey over a span of years.

¶42 It is clear that there were sufficient contacts to constitute the transaction of business here. This is especially true in light of the realities of contemporary commerce in which people and companies regularly interact in nation-wide and indeed international transactions. Many of these transactions are conducted electronically without the

necessity of face-to-face communication. Milky Whey and Dairy Products engaged in a pattern of transactions, sufficiently establishing that Dairy Products was in fact transacting "any business" in Montana. *Grizzly Sec.*, ¶ 30. Dairy Products operated, as it was entirely entitled to do, well beyond the borders of its home state, but doing so can entail commensurate burdens, such as being subject to jurisdiction in the courts of another state. *See Great Plains Crop Mgmt. Inc. v. Tryco Mfg. Co., Inc.*, 554 F. Supp. 1025, 1027.

¶43 Further, subjecting Dairy Products to jurisdiction in Montana courts on this claim would comport with notions of fair play and substantial justice, consistent with due process. While Dairy Products would be burdened by defending the action in Montana, there is no clear advantage or disadvantage to one side or the other in terms of witnesses and evidence. Dairy Products has no substantive equitable argument for insisting on a Minnesota forum for this action. Montana has a clear interest in assisting a Montana business in the resolution of a commercial dispute. Montana can provide a forum for resolution of this dispute without offending Dairy Products' interests in due process.

¶44 I would reverse the District Court and allow the cause of action to proceed in Montana courts.


/S/ MIKE McGRATH


Justice Michael E Wheat joins the Dissent of Chief Justice Mike McGrath.

/S/ MICHAEL E WHEAT

20