FILED

September 29 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0666

DA 14-0666

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 284

EMILIO H. GARZA, CANDICE GARZA,
ROBERT W. MILLER, RANDALL E. MILLER,
ROBERT H. KRUGER, JAMES L. LARSON,
JAMES W. BOLDING, JAMES W. BLOMGREN,
SOUGH STICKELMEYER, JOHN W. WELLS,
STEPHEN J. JOHNSON, ESTATE OF
CANDICE GARZA and TRI-UNITA LLC,

        Plaintiffs and Appellees,

    v.

FORQUEST VENTURES, INC.; KEN A
HAGMAN; ALLISON HAGMAN; and
DOES 1 THROUGH XX,

        Defendants, Third Party
        Plaintiffs and Appellants.

---

KEN A. HAGMAN and ALLISON HAGMAN,

        Third Party Plaintiffs and Appellants,

    v.

RONNIE MILLER and ADVANCED
ANALYTICAL, LLC, ADVANCED
ANALYTICAL, MATHIAS
INVESTMENTS, LLC, and DOES 1-10,

        Third Party Defendants and Appellees.

---

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and For the County of Cascade, Cause No. DDV-09-1010
                Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

> For Appellants:
>
>> Murry Warhank, Burt W. Ward, Gough, Shanahan, Johnson & Waterman, PLLP, Helena, Montana
>> (*Attorneys for Ken and Allison Hagman*)
>>
>> Rachel A. Clark, Church, Harris, Johnson & Williams, Great Falls, Montana
>> (*Attorney for Forquest Ventures, Inc.*)
>
> For Appellees:
>
>> Glenn E. Tremper, Glenn E. Tremper, PLLC, Great Falls, Montana
>> (*Attorney for Emilio Garza, et. al*)

Submitted on Briefs:  August 12, 2015
Decided:  September 29, 2015

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Forquest Ventures, Inc., Ken Hagman, and Allison Hagman[1] (collectively Forquest) appeal the Order of the Eighth Judicial District Court, Cascade County, granting Appellees'[2] motion for summary judgment and dismissing Advanced Analytical, LLC, for lack of personal jurisdiction. We address the following issues on appeal:

*1. Whether the District Court correctly determined that Investors timely asserted their claims under the Montana Securities Act, § 30-10-307(5)(b), MCA;*

*2. Whether the District Court correctly determined that the non-Garza Investors' claims relate back to the original complaint's filing date;*

*3. Whether the District Court correctly determined that there were no genuine issues of material fact regarding Forquest's failure to use reasonable care in the sale of securities to Investors;*

*4. Whether the District Court correctly dismissed Advanced Analytical for lack of personal jurisdiction.*

¶2    We affirm on Issues 1, 2, and 3, reverse on Issue 4, and remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    Forquest Ventures is an Idaho corporation formed to operate a placer mining enterprise at the El Dorado Bar site northeast of Helena, Montana. Its sole director, Ken Hagman, incorporated Forquest Ventures in October 2005. Hagman and his wife,

---

[1]    Allison Hagman is identified as an appellant in this matter, although the District Court dismissed the plaintiffs' claims against her. Plaintiffs have not cross-appealed that ruling.

[2]    Appellees are Emilio H. Garza, Candice Garza, Robert W. Miller, Randall E. Miller, Robert H. Kruger, James L. Larson, James W. Bolding, James W. Blomgren, Sough Stickelmeyer, John W. Wells, Stephen J. Johnson, Estate of Candice Garza, Tri-Unita, LLC, and Advanced Analytical, LLC. Advanced Analytical did not file a brief in this appeal. We refer to the remaining Appellees collectively as Investors.

Allison Hagman, were Forquest Ventures' principal investors and shareholders and its only corporate officers.

¶4 In forming Forquest Ventures, Hagman, who had no commercial mining experience or expertise, relied in part on his brother-in-law Ronnie Miller's representations regarding the El Dorado Bar site. Miller, in turn, relied on purported assay reports of the site allegedly performed by Advanced Analytical. The assay reports purported to show high levels of precious metal content at the site. Hagman also reviewed Advanced Analytical's purported assays and other information provided by Miller about the El Dorado Bar site before forming Forquest Ventures. Forquest never completed any professional mining feasibility assessment of the El Dorado Bar site before soliciting investment.

¶5 Following incorporation, Forquest sold or issued stock to at least 36 shareholders, including Investors. Most of the shareholders, including Investors, are relatives or family friends of Miller and Hagman. In making their initial investments, Investors ultimately relied on Forquest's representations that the mine likely would be highly profitable. Forquest based these representations on the purported Advanced Analytical assays. Prior to the mine's start-up and throughout its operation, Forquest repeatedly made representations to Investors about the mine's profit potential and continued to solicit capital from Investors. In total, Forquest received over $600,000 from Investors.

¶6 Although Forquest acknowledged start-up and operational problems at the mine to Investors, Forquest's optimistic representations about the venture's ultimate profitability continued until late August 2007. In September 2007, Forquest received independent,

third-party assay results showing very little precious metal content at the El Dorado Bar site. Forquest did not inform Investors about the third-party assay results until October 19, 2007. In that communication, Forquest told Investors that "reality and truth have finally been set in front of us" and also informed Investors that Forquest Ventures had ceased mining operations. Ultimately, Forquest Ventures realized no profits and Investors received no return on their investments. The Hagmans, who owned approximately 31 percent of Forquest Ventures' stock, also received no return on their investment.

¶7 On October 14, 2009, Emilio and Candice Garza, individually and on behalf of all similarly situated Forquest Ventures investors, brought claims against Forquest for compensatory and punitive damages based on alleged violations of the Montana Securities Act, §§ 30-10-301(1) and -307(1), (2), MCA; breach of fiduciary duty; violations of the Montana Consumer Protection Act, § 30-14-103, MCA; negligent misrepresentation; and constructive fraud. On October 1, 2010, the Garzas filed an amended complaint adding the other Investors as named plaintiffs. Forquest filed a counterclaim against Investors and a third-party complaint against Miller and Advanced Analytical. The third-party complaint alleged negligence against Miller and Advanced Analytical and sought contribution and indemnity from both.

¶8 Advanced Analytical responded by filing an unsupported motion to dismiss for failure to state a claim that the District Court denied. Under new counsel, Advanced Analytical then filed a motion to dismiss for lack of personal jurisdiction and

alternatively, for summary judgment on the ground that Forquest's claims were time-barred.

¶9     Investors moved for summary judgment on their Montana Securities Act claims and Forquest filed a cross-motion for summary judgment on the ground that the claims were statutorily time-barred. The District Court heard argument on all pending motions in June 2012.

¶10    In June 2013, the District Court issued a thorough 194-page order granting summary judgment to Investors, denying Forquest's cross-motion for summary judgment, and granting Advanced Analytical's motion to dismiss. After resolving subsequent motions, the District Court entered an amended and final judgment in September 2014. The District Court concluded the following: "Misrepresentation" under § 30-10-307(1), MCA, is not a matter of strict liability but requires a showing of failure to use reasonable care regarding the truth or accuracy of statements made in the offer or sale of a security; Forquest offered and sold securities to Investors by means of "misrepresentation" within the meaning of § 30-10-307(1), MCA; Allison Hagman was not personally liable to Investors; Investors timely asserted their claims under § 30-10-307(5)(b), MCA; the non-Garza Investors' claims relate back to the original complaint's filing date; and the court did not have personal jurisdiction over Advanced Analytical. Advanced Analytical is unrepresented on appeal. Forquest appeals several of the District Court's rulings.

## STANDARD OF REVIEW

¶11  We review an entry of summary judgment de novo. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704. Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Albert*, ¶ 15. If this burden is met, the burden shifts to the nonmoving party to establish with substantial evidence—as opposed to mere denial, speculation, or conclusory assertions—that a genuine issue of material fact does exist or that the moving party is not entitled to judgment as a matter of law. *Phelps v. Frampton*, 2007 MT 263, ¶ 16, 339 Mont. 330, 170 P.3d 474.

¶12  We review a district court's decision on a motion to dismiss for lack of personal jurisdiction de novo. *Milky Whey, Inc. v. Dairy Partners, LLC*, 2015 MT 18, ¶ 7, 378 Mont. 75, 342 P.3d 13. We construe the complaint in the light most favorable to the plaintiff. *Milky Whey*, ¶ 7.

**DISCUSSION**

¶13  *1. Whether the District Court correctly determined that Investors timely asserted their claims under the Montana Securities Act, § 30-10-307(5)(b), MCA.*

¶14  A person claiming fraud or misrepresentation under the Montana Securities Act must file suit "within 2 years after discovery of the fraud or misrepresentation on which the liability is founded or after the discovery should have been made by the exercise of reasonable diligence." Section 30-10-307(5)(b), MCA. The Montana Securities Act is partly modeled after federal securities law and this Court has applied federal case law to interpret Montana's securities statutes. *State v. Himes*, 2015 MT 91, ¶ 34, 378 Mont.

419, 345 P.3d 297. Federal courts interpret the federal securities limitations statute, 28 U.S.C. § 1658(b)(1), in the same manner as § 30-10-307(5)(b), MCA, is written. *Merck & Co. v. Reynolds*, 559 U.S. 633, 648, 130 S. Ct. 1784, 1796 (2010) (holding that "discovery" as used in 28 U.S.C. § 1658(b)(1) "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known.").

¶15 The District Court granted summary judgment to Investors on the ground that Investors' fraud and misrepresentation claims did not accrue prior to receiving Forquest's October 19, 2007 correspondence informing Investors that Advanced Analytical's purported assays were inaccurate and mining operations had ceased. Therefore, the court ruled that Investors timely filed their complaint on October 14, 2009, pursuant to § 30-10-307(5)(b), MCA. In reaching this conclusion, the District Court relied in part on federal decisions construing 28 U.S.C. § 1658(b)(1), including *Merck*.

¶16 On appeal, Forquest first argues that unless the limitations statute was tolled, Investors' claims are time-barred because the last securities sale occurred on February 27, 2007. Investors therefore could not have been harmed by any misrepresentation in a securities sale after that date. In addition, Forquest relies on § 27-2-102(3), MCA, and case law construing it, to argue that the limitations statute was not tolled because the facts underlying Forquest's misrepresentations were publicly available to Investors and therefore not self-concealing. Forquest relies on federal case law, including *Merck*, to further assert that Investors' knowledge of the mine's operational problems, the failure to recover precious metals from the mine, and resulting lack of return on investment

8

constituted "storm warnings" of Forquest's misrepresentations. Forquest claims these "storm warnings" would have led a reasonably diligent investor to investigate further. Consequently, Forquest contends, Investors should have discovered Forquest's misrepresentations more than two years before filing suit.

¶17 Forquest's argument that Investors' claims are time-barred because the last securities sale occurred on February 27, 2007, is unpersuasive. Under § 30-10-307(5)(b), MCA, the limitations period does not commence when a security is sold by fraud or misrepresentation; it commences when the fraud or misrepresentation is discovered, "or after the discovery should have been made by the exercise of reasonable diligence." The date of the last securities sale therefore does not affect the statute of limitations under § 30-10-307(5)(b), MCA.

¶18 Forquest's reliance on § 27-2-102(3), MCA, also is unpersuasive. Section 27-2-102(3), MCA, is a general statute relating to the time within which an action must be commenced. Its language differs from that in § 30-10-307(5)(b), MCA. The general limitations statute, § 27-2-102(3), MCA, does not control Montana Securities Act claims governed by the limitations statute specific to such claims, § 30-10-307(5), MCA. *Mosley v. American Express Financial Advisors*, 2010 MT 78, ¶¶ 19-20, 356 Mont. 27, 230 P.3d 479. Accordingly, Forquest's reliance on *Thieltges v. Royal Alliance Associates, Inc.*, 2014 MT 247, 376 Mont. 319, 334 P.3d 382, is misplaced. *Thieltges* involved a general tort action, and it was undisputed that the general statute governing tort actions applied. *Thieltges*, ¶ 14.

¶19    In *Thieltges*, we addressed whether the facts constituting investors' claims against a brokerage firm were concealed or self-concealing. *Thieltges*, ¶ 13. The investors in *Thieltges* failed to learn that the certified public accountant handling their investments was a registered securities salesperson with the brokerage firm until they deposed him after the § 27-2-204(1), MCA, limitations period ran. *Thieltges*, ¶ 8. In concluding that the investors' lack of knowledge about their claims against the brokerage firm did not toll the limitations period, we first affirmed the general rule that "a claim accrues and the limitation period begins to run when all elements of the claim exist or have occurred." *Thieltges*, ¶ 15. We determined that investors' claims accrued when they "became aware of their injuries" after being informed that they would not receive returns on their investments. *Thieltges*, ¶ 19. Finally, we concluded that the limitations period was not tolled because the facts constituting investors' claims against the brokerage firm "were neither concealed nor self-concealing." *Thieltges*, ¶ 19. In making this determination, we relied in part on the fact that investors "could readily have discovered through public records" that the accountant was a registered securities salesperson with the brokerage firm. *Thieltges*, ¶ 19.

¶20    Here, similar to *Thieltges*, Investors' claims did not accrue until they became aware of their injuries. Investors did not become aware of their injuries until they were informed that Advanced Analytical's purported assays were inaccurate and they would not receive any return on their investment because Forquest ceased mining operations. Even if § 27-2-102(3), MCA, applied to Investors' claims, Forquest's reliance on *Thieltges* in arguing that Investors had a duty to search public records about the

10

El Dorado Bar site's mining history and Advanced Analytical's reputation is unpersuasive. Unlike the publicly available information in *Thieltges*, which securities laws require be made available to the public,[3] the "publicly available" information Forquest contends Investors had a duty to investigate is not easily searchable or readily available. Moreover, the information Forquest contends was "publicly available" to Investors likewise was available to Forquest prior to beginning mining operations and soliciting investment. The Montana Securities Act imposes duties upon sellers and offerors of securities, not investors, regarding the truth and accuracy of representations made during the sale of a security. Section 30-10-301(1), MCA. The facts regarding accuracy of Forquest's representations were not the type of "publicly available" information at issue in *Thieltges*.

¶21 Finally, Forquest misinterprets federal case law construing 28 U.S.C. § 1658(b)(1) in asserting that Investors should have discovered Forquest's misrepresentations more than two years before filing suit based on "storm warnings" of the mine's ultimate failure. The United States Supreme Court examined 28 U.S.C. § 1658(b)(1) for the first time in *Merck*. *Merck*, 559 U.S. at 637, 130 S. Ct. at 1789. In *Merck*, respondent investors argued that they suffered economic losses due to the drug company's knowing misrepresentations about one of its products. *Merck*, 559 U.S. at 637-38, 130 S. Ct. at 1790. The drug company argued that the investors' claims were untimely because the

---

[3] Section 30-10-201, MCA, requires securities brokers or sellers to register with the Commissioner of Securities and Insurance. The Commissioner's website maintains a database that allows the public to search for information on investment professionals registered in Montana. Montana Commissioner of Securities & Insurance, *Securities: How to Protect Yourself*, csimt.gov, http://csimt.gov/securities/protectionsteps (http://perma.cc/SU5X-B2TJ).

11

investors had "inquiry notice" of the facts underlying their claims and therefore they knew or should have known of the misrepresentations more than two years before filing the complaint. *Merck*, 559 U.S. at 638, 130 S. Ct. at 1790.

¶22 In addressing the drug company's arguments, the Court emphasized that under 28 U.S.C. § 1658(b)(1), the "limitations period does not begin to run until 'discovery of the *facts constituting the violation*.'" *Merck*, 559 U.S. at 648, 130 S. Ct. at 1796 (quoting 28 U.S.C. § 1658(b)(1)) (emphasis in original). The Court then specified that although "inquiry notice" could be "the point where the facts would lead a reasonably diligent plaintiff to investigate further, that point is not necessarily the point at which the plaintiff would already have discovered . . . 'facts constituting the violation.'" *Merck*, 559 U.S. at 651, 130 S. Ct. at 1797. Thus, the Court concluded that the limitations period does not automatically begin upon "the 'discovery' of facts that put a plaintiff on 'inquiry notice.'" *Merck*, 559 U.S. at 653, 130 S. Ct. at 1798. In rejecting the "inquiry notice" standard, the Court further specified:

> In determining the time at which "discovery" of [the facts constituting the violation] occurred, terms such as 'inquiry notice' and 'storm warnings' may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. *But the limitations period does not begin to run until* the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' . . . irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.

*Merck*, 559 U.S. at 653, 130 S. Ct. at 1798 (emphasis added).

¶23 Similar to the limitations period addressed in *Merck*, the limitations period prescribed in § 30-10-307(5)(b), MCA, does not begin to run until discovery of, or after a

reasonably diligent plaintiff should have discovered, "the fraud or misrepresentation on which the liability is founded." Investors may have "discovered" facts concerning problems with the mining venture, but contrary to Forquest's argument, that does not automatically mark "the point at which [Investors] would already have discovered" Forquest's misrepresentations. *Merck*, 559 U.S. at 651, 130 S. Ct. at 1797.

¶24 Forquest has not met its burden of establishing specific facts, as opposed to speculation or conjecture, showing how and when a reasonably diligent investor should have discovered Forquest's misrepresentations prior to October 19, 2007. Advanced Analytical's assays of the El Dorado Bar site purportedly showing—as Forquest represents in its brief— "that the mine would be one of the richest in the world" led to Forquest Ventures' formation. Forquest, in turn, relied on the purported assays in making representations to Investors. These representations included claims that the mine held "well over one billion dollars of precious metals and stones," and led Forquest to project a "conservative" annual investment return rate of "200%." Such representations are the representations on which Forquest's liability is founded. Investors reasonably could not have discovered that Forquest's representations were false or misleading until Investors knew that the purported assays of the El Dorado Bar site were inaccurate.

¶25 Forquest's argument that Investors had a duty to discover the inaccuracy of the purported assays based on the multiple issues surrounding the mine's operation is unpersuasive considering that Forquest did not discover the purported assays' inaccuracies until receiving the results of an independent, third-party assay in September 2007. Forquest waited to communicate this information to Investors until October 19,

2007. Forquest does not explain why reasonable diligence would demand that individual Investors obtain their own independent third-party assay in the face of Forquest's representations. It speculates that Investors could have discovered, but does not justify why they should have discovered, the misrepresentations before October 19, 2007.

¶26 Investors' claims did not accrue until October 19, 2007, and thus, Investors timely filed their complaint under § 30-10-207(5)(b), MCA. Accordingly, we affirm the District Court's grant of summary judgment to Investors on this issue.

¶27 *2. Whether the District Court correctly determined that the non-Garza Investors' claims relate back to the original complaint's filing date.*

¶28 M. R. Civ. P. 15(c)(1)(B) provides that amendments to pleadings relate back to the original pleading when the "amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." In analyzing whether the claim of a new party plaintiff arises out of the conduct, transaction, or occurrence set out in the original plaintiff's pleading, we look to whether there is a "clear identity of interest" between the original plaintiff and the newly-added plaintiff. *Tynes v. Bankers Life Co.*, 224 Mont. 350, 358, 730 P.2d 1115, 1121 (1986). The policies underlying statutes of limitation also should be considered when determining whether an amendment relates back. *Tynes*, 224 Mont. at 358, 730 P.2d at 1120 (concluding that the purpose of the statute of limitations is to provide a defendant with adequate notice of the claim against it, give a defendant the opportunity to adequately defend, ensure fairness, and prevent undue prejudice to the defendant).

14

¶29 In granting summary judgment to Investors, the District Court concluded that the non-Garza Investors' claims related back to the original complaint because the claims arose out of the same continuing conduct, occurrence, and transactions—namely, Forquest's securities sales to Investors. On appeal, Forquest asserts that the District Court erred in its determination because Investors became involved in Forquest Ventures under different circumstances so there was no identity of interest among Investors. Forquest relies on this Court's decision in *Walstad v. Northwest Bank of Great Falls*, 240 Mont. 322, 783 P.2d 1325 (1989), to argue that the conduct asserted in the non-Garza Investors' claims is not identical to the conduct asserted in the original complaint. Forquest therefore contends that the claims in the amended complaint do not relate back to the original complaint and the non-Garza Investors' claims are barred by the statute of limitations.

¶30 As the District Court noted, *Walstad* is not applicable to the facts of this case. In *Walstad*, we held that the claims in the amended complaint did not relate back to the claims in the original complaint due to the dissimilar nature of the collateral transactions at issue. *Walstad*, 240 Mont. at 326, 783 P.2d at 1327-28. The alleged harm in the amended *Walstad* complaint arose from the defendants' loan to the party seeking to be added as a plaintiff whereas the alleged harm in the original complaint arose from the plaintiffs' guaranty of that loan. *Walstad*, 240 Mont. at 326, 783 P.2d at 1327. We concluded that the parties therefore had no "clear identity of interest." *Walstad*, 240 Mont. at 326, 783 P.2d at 1327.

15

¶31    We agree with the District Court that the underlying transactions at issue—securities sales induced by common misrepresentations—distinguish this case from *Walstad*. We also agree that there is a clear identity of interest between Investors because, as the District Court stated:

> (1) The Garza and non-Garza [Investors] purchased of [sic] the same or similar securities in the same venture or corporate enterprise;

> (2) [Forquest] sequentially offered and sold the same or similar securities to all of the [Investors] by means of the same or substantially similar negligently false and inaccurate representations of material fact; and

> (3) the Garza [Investors] timely asserted their original claims individually in a representative capacity "on behalf of all others similarly situated."

¶32    Moreover, concluding that the non-Garza Investors' claims relate back to the original complaint does not undermine the policies underlying the statute of limitations. Forquest had notice of the claims against it in the original complaint and had an adequate opportunity to defend those claims because the Garzas' original complaint asserted claims on behalf of all others similarly situated—which, as Forquest knew, was a relatively small pool.

¶33    We conclude that the non-Garza Investors' claims arose out of the conduct, transaction, or occurrence set out in the original complaint and therefore relate back to the date of its filing. Accordingly, we affirm the District Court's grant of summary judgment to Investors on this issue.

¶34    *3. Whether the District Court correctly determined that there were no genuine issues of material fact regarding Forquest's failure to use reasonable care in the sale of securities to Investors.*

¶35 After a detailed analysis, the District Court construed § 30-10-307(1), MCA, to require proof of failure to use reasonable care in offering or selling securities in order to establish misrepresentation. The parties do not challenge on appeal the District Court's construction of the statutory elements of a misrepresentation claim under § 30-10-307(1), MCA.

¶36 The District Court further determined that Investors demonstrated the absence of genuine issues of material fact regarding Forquest's failure to use reasonable care in the sale of securities. The District Court relied in part on the following facts in determining that, under the totality of the circumstances, Forquest failed to use reasonable care: Forquest affirmatively represented to Investors that the venture likely would be highly profitable; reasonably diligent analysis of the El Dorado Bar site would have revealed the site's unsuitability for profitable placer mining; and Advanced Analytical's purported assays were not reasonably reliable and accurate based in part on Forquest's sampling methodology and its erroneous assay interpretation, analysis, and projection.

¶37 On appeal, Forquest argues that the District Court erred in determining that there were no genuine issues of material fact regarding Forquest's exercise of reasonable care. At minimum, Forquest asserts, reasonableness is a question of fact for the jury. Forquest offers the following as evidence of its use of reasonable care: Hagman relied on an attorney when organizing Forquest Ventures; Forquest told investors that there was risk associated with investing in the mining operation; and Forquest relied on Advanced Analytical to analyze samples and provide consulting services. Forquest further asserts that if this Court holds under Issue 1 that a reasonably diligent plaintiff would not have a

duty to investigate Forquest's representations based on the issues surrounding the mining venture, then there must be questions of fact regarding whether Forquest used reasonable care in relying on Advanced Analytical's purported assays.

¶38　Although breach of a duty to exercise reasonable care is generally a question of fact, *Nelson v. Driscoll*, 1999 MT 193, ¶ 40, 295 Mont. 363, 983 P.2d 972, such questions may be determined as a matter of law "when reasonable minds cannot differ," *Wiley v. City of Glendive*, 272 Mont. 213, 216, 900 P.2d 310, 312 (1995). Forquest has not met its burden of establishing by substantial evidence that a genuine issue of material fact exists regarding Forquest's failure to use reasonable care. In fact, Forquest's arguments under Issue 1 belie its argument here. Forquest argues that Investors were not reasonably diligent in discovering Forquest's misrepresentations because "Forquest was forecasting sunshine despite the fact that it was obviously raining." Reasonable minds cannot differ that forecasting sunshine despite the fact that it was obviously raining constitutes a failure to use reasonable care. In selling securities to Investors, Forquest was the "weatherman" on whom Investors relied in making their investments.

¶39　Forquest's proffered evidence of reasonable care does not rise above the level of mere denial, speculation, or conclusory assertions. By asserting that he relied on an attorney in organizing Forquest Ventures, Hagman, who had no mining experience or expertise, does not demonstrate his exercise of reasonable care in representing to Investors the mine's high profit potential. Forquest's assertion that it told Investors that there was risk associated with the mining operation does not rise to the level of substantial evidence of reasonable care considering that those same communications also

18

contained representations and assurances that the venture likely would be highly profitable. Finally, the reasonableness of Forquest's reliance on Advanced Analytical's expertise and purported assays is defeated by its own argument that Investors failed to exercise reasonable diligence by not investigating the accuracy of Advanced Analytical's purported assays.

¶40 Contrary to Forquest's argument, our holding on Issue 1 does not undermine this conclusion. One of the fundamental purposes of the Montana Securities Act is to protect investors. Section 30-10-102(1), MCA. The Act does so by imposing duties upon sellers and offerors of securities. *E.g.* § 30-10-301(1)(b), MCA ("It is unlawful for any person, in connection with the offer, sale, or purchase of any security . . . to . . . make any untrue statement of a material fact . . . ."). Under the District Court's formulation of the statutory elements, one of the duties imposed upon sellers of securities in order to protect investors is the use of reasonable care. As discussed above, an investor is not held to the same duty to discover the fraud or misrepresentation upon which liability is founded.

¶41 Accordingly, we conclude that the District Court correctly determined that Forquest established no genuine issues of material fact demonstrating its exercise of reasonable care in the sale of securities to Investors. The District Court therefore properly concluded that Investors were entitled to summary judgment on this issue.

¶42 *4. Whether the District Court correctly dismissed Advanced Analytical for lack of personal jurisdiction.*

¶43 M. R. Civ. P. 12(b)(2) provides that a party may raise a lack of personal jurisdiction defense by motion at its option. A party also may waive a personal

19

jurisdiction defense and consent to a court's jurisdiction. *El Dorado Heights Homeowners' Ass'n v. Dewitt*, 2008 MT 199, ¶ 16, 344 Mont. 77, 186 P.3d 1249. Rule 12(h)(1) states that a party waives the defense of lack of personal jurisdiction by "omitting it from a motion in the circumstances described in Rule 12(g)(2); or . . . [by] failing to either:

    (i)     make it by motion under this rule; [or]
    (ii)    include it in a responsive pleading . . .

Rule 12(g)(2) prohibits a party that makes any Rule 12 motion from making "another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Under these rules, a party waives a personal jurisdiction defense by failing to raise it in the party's initial response. *El Dorado Heights*, ¶ 16.

¶44 The District Court concluded that Advanced Analytical "procedurally, albeit unintentionally," waived its personal jurisdiction defense by filing, through former counsel, a Rule 12(b)(6) motion before filing a Rule 12(b)(2) motion with new counsel. The court reasoned, however, that dismissal based solely on such an "unintentional procedural waiver" does not comport with due process requirements and, without citing authority, concluded that personal jurisdiction can be waived only if done so "knowingly, voluntarily, and intelligently." Proceeding to examine the merits of Advanced Analytical's personal jurisdiction defense, the court dismissed Advanced Analytical for lack of personal jurisdiction under Montana's long-arm statute.

¶45 On appeal, Forquest relies on *Prentice Lumber Co. v. Spahn*, 156 Mont. 68, 474 P.2d 141 (1970), and *In re Marriage of Smith*, 2008 MT 461, 348 Mont. 174, 199 P.3d

824, to argue that Advanced Analytical waived its jurisdictional defense by filing an initial Rule 12(b) motion without raising personal jurisdiction. Forquest further argues that waiver of a personal jurisdiction defense does not violate due process, citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S. Ct. 2099 (1982) (hereinafter *Ireland*).

¶46 Investors argue that the District Court correctly determined that Advanced Analytical could not waive unintentionally its personal jurisdiction defense.[4] Investors, however, lack standing to make this argument. *Jones v. Mont. Univ. Sys.*, 2007 MT 82, ¶ 50, 337 Mont. 1, 155 P.3d 1247 (concluding a party lacks standing to "assert the constitutional rights of others").

¶47 In *Ireland*, the U.S. Supreme Court began its discussion of personal jurisdiction by noting that "personal jurisdiction flows . . . from the Due Process Clause," and therefore "protects an individual liberty interest." *Ireland*, 456 U.S. at 702, 102 S. Ct. at 2104. As an individual liberty interest, personal jurisdiction may, "like other such rights, be waived." *Ireland*, 456 U.S. at 703, 102 S. Ct. at 2105. The Court went on to note that personal jurisdiction may be waived intentionally, "or for various reasons a defendant may be estopped from raising the issue." *Ireland*, 456 U.S. at 704, 102 S. Ct. at 2105. Moreover, a party's actions "may amount to a legal submission to the jurisdiction of the

---

[4] Investors also contend that continuing discussion of this issue will only further delay Investors' right to recover. The District Court ruled that, as joint tortfeasors, Forquest and Advanced Analytical would be jointly and severally liable for the entire amount owed to Investors if Advanced Analytical otherwise was subject to the court's personal jurisdiction. As such, Investors' right to recover the entire judgment from Forquest is unaffected by Forquest's contribution claim against Advanced Analytical. *Azure v. Billings*, 182 Mont. 234, 250, 595 P.2d 460, 469 (1979) (stating that under joint and several liability "the plaintiff may recover against one or all" of the tortfeasors).

21

court, whether voluntary or not." *Ireland*, 456 U.S. at 704-05, 102 S. Ct. at 2105. As the Court explained, "The expression of legal rights is often subject to certain procedural rules: The failure to follow those rules may well result in a curtailment of the rights. Thus, the failure to enter a timely objection to personal jurisdiction constitutes, under Rule 12(h)(1), a waiver of the objection." *Ireland*, 456 U.S. at 705, 102 S. Ct. at 2105.

¶48 M. R. Civ. P. 12(h)(1) is in relevant part identical to Fed. R. Civ. P. 12(h)(1). In *Milanovich v. Schnibben*, 2007 MT 128, 337 Mont. 334, 160 P.3d 562, we cited *Ireland* in stating, "Personal jurisdiction, as an individual right, can be waived by express or implied consent." *Milanovich*, ¶ 10 (citing *Ireland*, 456 U.S. at 703, 102 S. Ct. at 2105). The procedural curtailment of the substantive right of personal jurisdiction pursuant to M. R. Civ. P. 12 does not implicate due process concerns. *See Ireland*, 456 U.S. at 704-05, 102 S. Ct. at 2105. Moreover, this Court's precedent makes clear that a party waives a personal jurisdiction defense by failing to enter a timely objection as prescribed by M. R. Civ. P. 12. *El Dorado Heights*, ¶ 16 (concluding that by not raising the defense of personal jurisdiction in their first response, defendant consents to a court's jurisdiction and waives the defense); *Smith*, ¶ 18 (holding that a defendant waives a personal jurisdiction defense by indicating that he anticipates to challenge personal jurisdiction and then failing to file such a motion or supporting brief within the time frame established by the court).

¶49 In *Milky Whey*, we analyzed waiver of personal jurisdiction under M. R. Civ. P. 12(h)(1)(B)(ii). *Milky Whey*, ¶ 15. We held that the defendant did not waive its personal jurisdiction defense by failing to raise the issue in its initial notice of appearance when it

22

raised the issue by motion two weeks later, prior to filing its answer to the complaint. We reasoned that a notice of appearance is not a responsive pleading within the meaning of Rule 12(h)(1)(B)(ii). *Milky Whey*, ¶ 16. This case, in contrast, involves the filing of a Rule 12(b) motion that failed to raise lack of personal jurisdiction. Under Rule 12(g)(2), Advanced Analytical was required to join its Rule 12(b)(2) and 12(b)(6) motions in the same filing. By omitting the personal jurisdiction issue from the motion to dismiss, Advanced Analytical came squarely within the prohibition of Rule 12(h)(1)(A) and therefore waived the defense.

¶50 We hold that Advanced Analytical's waiver does not implicate due process concerns. Accordingly, we reverse the District Court's dismissal of Advanced Analytical for lack of personal jurisdiction.

## CONCLUSION

¶51 We affirm the District Court's Order granting summary judgment to Investors against Ken Hagman and Forquest Ventures and dismissing Allison Hagman. We reverse its dismissal of Advanced Analytical for lack of personal jurisdiction and remand to the District Court for further proceedings consistent with this Opinion.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE